FOURTH DIVISION

November 17, 2005

No. 1-04-3014

ROXANNE BROWN, in her individual capacity and as a resident ) Appeal from the 

and taxpayer of Bellwood School District 88, Cook County, ) Circuit Court of 

Illinois, and as a member of the School Board of Bellwood School ) Cook County

District 88; ERIKA OROZCO, in her individual capacity and as )

a resident and taxpayer of Bellwood School District 88, Cook )

County, Illinois, and as a member of the School Board of Bellwood )

School District 88; and, CHARLES BAXTER, a resident and )

taxpayer of Cook County, Illinois, )

)

Plaintiffs, )

) 

v. )   No. 04 CH 4561

)

JEANNETTE JOHNSON, in her official capacity as a member )

of the School Board of Bellwood School District 88; JOHN )

WICKS, in his official capacity as a member of the School Board ) 

of Bellwood School District 88; TOMMY MILLER, in his )

individual capacity and as a member of the School Board of ) 

Bellwood School District 88; ANTONNETTE DORRIS, in her ) 

individual capacity and as a member of the School Board of ) 

Bellwood School District 88; EMANUEL WELCH; and THE )

BELLWOOD SCHOOL DISTRICT 88 BOARD OF )

EDUCATION, )

)

Defendants )

)

(Marilyn Thurman and Robert Ingraffia, )

)

Respondents in Discovery; )

)

The Bellwood School District 88 Board of Education, )

)

Counterplaintiff-Appellee; )

)

Roxanne Brown and Erika Orozco, )

)

Counterdefendants; )

)

Robert Ingraffia, ) The Honorable

) Aaron Jaffe,

Intervenor-Appellant). ) Judge Presiding. 

JUSTICE GREIMAN delivered the opinion of the court:

 

Plaintiffs-counterdefendants Roxanne Brown, Erika Orozco and Charles Baxter (collectively, plaintiffs) brought suit against defendants-counterplaintiffs Jeannette Johnson, John Wicks, Tommy Miller, Antoinette Dorris, Emanuel Welch and the Board of Education of Bellwood School District Number 88 (individually, the Board) (collectively, defendants) alleging that defendants violated constitutional and common law when they found that neither Brown nor Orozco lived in District 88 and declared that Brown’s and Orozco’s positions as members of the Board had been vacated, and seeking declaratory and injunctive relief.  Defendants filed a counterclaim for declaratory judgement that the Board was entitled to find that facts existed that gave rise to vacancies on the Board and to fill the vacancies.  Robert Ingraffia, in his official capacity as the superintendent of educational services for the region of suburban Cook County, intervened on behalf of plaintiffs.  The trial court granted defendants’ counterclaim and further found no just reason to delay enforcement or appeal of its order.  Plaintiffs and Ingraffia appealed.  Plaintiffs dismissed their appeal.  On appeal, Ingraffia contends that the trial court erred in finding that the Board was entitled to determine whether facts existed giving rise to vacancies.  

On March 15, 2004, plaintiffs filed their complaint in which they alleged that Brown and Orozco were each elected members of the Board and that each permanently resided within the boundaries of District 88.  Baxter was a taxpayer and resident of Cook County.  Defendants Johnson, Wicks, Miller and Dorris were also Board members.  Defendant Welch was the Board’s attorney.  Plaintiffs alleged that on March 4, 2004, Wicks telephoned Orozco and informed her that she had until the end of the day to resign her position on the Board.  At the March 8, 2004, Board meeting, a closed session was called.  During the closed session, Welch distributed an opinion letter he had written to Johnson.  In the letter, Welch explained that Wicks had received a package containing documents that purportedly showed that Brown and Orozco were not residents of District 88.  Welch had examined the allegations that Brown and Orozco were not residents and had concluded that Brown and Orozco had vacated their seats on the Board.  In their complaint, Brown and Orozco claimed to have first learned of the allegations during the March 8, 2004, closed session.  Brown and Orozco were asked to respond to the allegations contained in the letter.  Instead, they expressed their opinion that the closed session was illegal and indicated that they wished to speak with their attorneys before responding to the allegations.  Brown and Orozco were not permitted to consult their attorneys.  Thereafter, the public session was reconvened and Johnson, Wicks, Dorris and Miller voted in favor of declaring Brown’s and Orozco’s seats on the Board vacant.  During the public session, Baxter asked permission to address the Board on a “matter of public concern” but his request was refused. 

Plaintiffs’ complaint alleged that the defendants had violated Brown’s and Orozco’s due process rights; had conspired to deprive Brown and Orozco of equal protection, privileges and immunities guaranteed by the United States Constitution; had violated Brown’s, Orozco’s, and Baxter’s freedom of speech; and had intentionally inflicted emotional distress on Brown and Orozco.  The complaint further asked that the court enter declaratory judgment that the Board did not have the authority to declare vacancies and that Brown and Orozco were members in good standing; direct defendants to recognize Brown and Orozco as members in good standing; and enter an order prohibiting defendants from filling the alleged vacancies.  

The trial court found that Brown’s and Orozco’s due process rights had been violated and entered a preliminary injunction preventing defendants from removing Brown and Orozco from the Board.  According to the parties’ attorneys’ statements during oral arguments, Brown and Orozco were permitted to serve the remainder of their terms as Board members and were not reelected to these positions.  

Defendants filed a counterclaim for declaratory judgment, asking the court to declare that pursuant to the School Code (105 ILCS 5/1-1 
et seq.
 (West 2004)) and the Election Code (10 ILCS 5/1-1 
et seq.
 (West 2004)), the Board was the entity authorized to determine whether the facts that give rise to vacancies on the Board existed and the Board was the entity authorized to appoint replacements to vacant positions. 

Ingraffia filed a petition to intervene, which was granted, and an answer to defendants’ counterclaim for declaratory judgment.  Each party submitted a memorandum of law on the issues raised in defendants’ counterclaim. 

Following a hearing on the counterclaim, on May 12, 2004, the trial court entered judgment in favor of defendants, finding that “[t]he intent of the legislature is clear; it is the Board who has the authority to fill a vacancy and the Board who determines the facts that give rise to a vacancy.”  On August 26, 2004, the court granted Ingraffia’s and plaintiffs’ motions for a Supreme Court Rule 304(a) finding and found no just reason to delay enforcement or appeal of its May 12, 2004, order.  155 Ill. 2d R. 304(a).   Ingraffia and plaintiffs appealed.  Upon plaintiffs’ own motion, their appeal was dismissed.

On appeal, Ingraffia contends that the trial court misinterpreted the School Code and the Election Code in finding that the Board was entitled to determine whether facts existed that gave rise to a vacancy.  Instead, Ingraffia suggests, the resident superintendent is the only party authorized to make such a determination.  

At the outset, we note that, though the parties did not raise the issue of mootness in their briefs, the issue was addressed during oral arguments.  Both parties conceded, and we agree, that the issue raised in this appeal is moot because the trial court found that Brown and Orozco’s due process rights were violated and enjoined the Board from declaring their seats on the Board vacant.  The injunction remained in place while Brown and Orozco served the remainders of their elected terms on the Board. 
See 
People 
ex rel.
 Hartigan v. Illinois Commerce Comm'n
, 131 Ill. App. 3d 376, 378 (1985) ("[a]n issue is moot where no actual rights or interests of the parties remain or where events occur which render it impossible for the reviewing court to grant effectual relief to either party"). Nonetheless, Ingraffia urges us to consider the issue because it involves a substantial public interest.  

A court may resolve an otherwise moot issue if the issue involves a substantial public interest. 
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 395 (1994).  In order to fall into the public interest exception (1) the question must be of a public nature; (2) an authoritative determination of the question must be desirable for the purpose of guiding public officers; and (3) the question must be likely to recur.  
Bonaguro
, 158 Ill. 2d at 395. All three factors must be clearly shown in order for an issue to fall into the public interest exception to mootness.   
Kohan v. Rimland School for Autistic Children
, 102 Ill. App. 3d 524, 527 (1981).  “Accordingly, the exception has been construed very narrowly and is invoked only on rare occasions where the degree of public interest and concern is very clear and an extraordinary degree of public concern and interest is involved.”  
Brown v. Duncan
, No. 1-04-1246, slip op. at 12 (September 1, 2005), citing 
DuPage County Election Comm'n v. State Board of Elections
, 345 Ill. App. 3d 200, 205 (2003); 
Edwardsville School Service Personnel Ass'n v. Illinois Educational Labor Relations Board
, 235 Ill. App. 3d 954, 959-60 (1992).   

This case, we believe, falls into the public interest exception to the mootness doctrine.  First, this case clearly involves a public interest.  School boards are elected bodies whose decisions directly affect the communities in which they are situated.  Second, a determination of the issue before us would guide the manner in which both school board members and regional superintendents act in the future when a board member vacancy is alleged.  Specifically, our decision will determine whether a board or a regional superintendent is authorized to decide that facts exist giving rise to a vacancy. Furthermore, the fact that the issue is now before us indicates that school boards and regional superintendents are unsure of how they should proceed when presented with a situation such as this one and are in need of an authoritative guide.  Finally, a situation such as this, in which facts are alleged that would give rise to a vacancy on a school board, is likely to recur.  Accordingly, we now turn to the substance of Ingraffia’s appeal. 

In this case, we are called upon to interpret and examine the interplay between provisions of the School Code and the Election Code.  

“The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] The best evidence of legislative intent is the statutory language.  When possible, the court should interpret the statute according to the plain and ordinary meaning of the language. [Citation.] In giving effect to legislative intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought. [Citation.] A statute is ambiguous if it is subject to two or more reasonable interpretations. [Citation.] The court can consult interpretive aids when construing an ambiguous statute
.”  
People v. Donoho
, 204 Ill. 2d 159, 171-72 (2003). 

In interpreting statutory language, a court should evaluate the statute as a whole and should construe each provision in connection with every other section.  
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 397 (1994).  We review a trial court’s interpretation of statutory language 
de
 
novo
.  
People v. O’Brien
, 197 Ill. 2d 88, 91 (2001). 

A school board must act within its statutorily granted authority.  
Evans v. Benjamin School District No. 25
, 134 Ill. App. 3d 875, 880 (1985).  A school board has the powers enumerated in the School Code and “may exercise all other powers not inconsistent with [the School Code] that may be requisite or proper for the maintenance, operation, and development of any school or schools under the jurisdiction of the board.”  105 ILCS 5/10-20 (West 2004).  If a vacancy occurs on a school board, the remaining members of the board are authorized to fill the vacancy.  105 ILCS 5/10-10 (West 2004).  Vacancies on a school board occur upon the happening of any of the following events: 

“1. The death of the incumbent.  

2. His or her resignation in writing filed with the Secretary or Clerk of the Board. 

3. His or her becoming a person under legal disability. 

4. 
His or her ceasing to be an inhabitant of the district for which he or she was elected. 

5. His or her conviction of an infamous crime, or of any offense involving a violation of official oath, or of a violent crime against a child. 

6. His or her removal from office.

7. The decision of a competent tribunal declaring his or her election void. 

8. His ceasing to be an inhabitant of a particular area from which he was elected ***.”  (Emphasis added.) 105 ILCS 5/10-11 (West 2004).

The Election Code consistently provides, in relevant part, that an elective office becomes vacant when, “if the office is local, his or her ceasing to be an inhabitant of the district, county, town, or precinct for which he or she was elected.”  10 ILCS 5/25-2(4) (West 2004).  The Election Code further provides that, “[w]henever it is alleged that a vacancy in any office exists, the officer, body, or county board who has authority to fill the vacancy by appointment, or to order an election to fill such vacancy, shall have power to determine whether or not the facts occasioning such vacancy exist.”  10 ILCS 5/25-3(a) (West 2004).  

The School Code empowers a regional superintendent of schools “[t]o remove any member of a school board from office for wilful failure to perform his official duties.”  105 ILCS 5/3-15.5 (West 2004).  

In this case, the trial court was called upon to determine whether section 25-3(a) of the Election Code authorized the Board to determine that Brown’s and Orozco’s seats were vacant.  The trial court found that the Board was so authorized, reasoning:

“In this case the language of the statutes [is] clear and unambiguous.  Section 25-2 of the Illinois Election Code provides that an elective office becomes vacant once an officeholder ceases to be an inhabitant of the district for which he or she was elected.  Section 25-3 of the Illinois Election Code states that the power to determine that a vacancy exists resides with the board who has the authority to fill a vacancy. [Section 10-10 of the School Code] lays forth in clear and unambiguous language that it is the board that has the statutory authority to fill a vacancy and that the superintendent shall only step in should the Board fail to act.”  

Ingraffia essentially raises two objections to the trial court’s conclusion.  First, Ingraffia contends that section 25-3(a) of the Election Code permits a school board to declare a vacancy only if the facts giving rise to the vacancy are undisputed.  Ingraffia argues that “the majority of the enumerated events that trigger a vacancy are self-evident or the subject of an official document and not subject to dispute.”  Residency, however, Ingraffia argues, can be factually disputed, as in this case where Brown and Orozco maintained that they continued to reside in District 88.  

We cannot agree with Ingraffia’s suggestion.  The language of section 25-3(a) of the Election Code clearly indicates that when a vacancy “is 
alleged
,” a school board is empowered to determine “
whether or not
” the facts occasioning a vacancy exist. (Emphasis added.) 10 ILCS 5/25-3(a) (West 2004).  The clear language of the statute, therefore, indicates that a school board is entitled to conduct a factual inquiry and reach a determination of whether a vacancy exists based on disputed facts. 

Next, Ingraffia suggests that when a school board member moves out of the district in which he or she is elected, the member has a duty to resign.  Because the School Code authorizes only the regional superintendent to remove a member for failing to perform his or her duties, a school board is not authorized to declare a vacancy when a member has failed to perform his or her duty to resign.  

Again, we cannot agree with Ingraffia’s suggested interpretation.  First, Ingraffia has not cited, nor has our investigation revealed, statutory language or case law that suggests that a school board member who is no longer a resident of his or her district has a specific duty to resign.  See 105 ILCS 5/1-1 
et seq.
 (West 2004).  Furthermore, if, as Ingraffia suggests, removal by the regional superintendent were a prerequisite to a school board declaring a vacancy when a member has moved out of its district, part (4) of section 10-11 of the School Code, which provides that a vacancy occurs when a member moves out of a board’s district, would be rendered superfluous by part (6), which provides that a vacancy occurs when a member is removed.  105 ILCS 5/10-11(4), (6) (West 2004).   

We find, for the above-stated reasons, that the objections raised by Ingraffia are without merit; we further agree with the trial court that the language of the School Code and Election Code unambiguously indicates that the legislature intended to empower a school board, the entity with the authority to fill a vacancy (see 105 ILCS 10-10 (West 2004)), to determine whether or not the facts giving rise to a vacancy exist (see 10 ILCS 5/25-3(a) (West 2004)).  

Significantly, we note that our holding does not mean that in determining whether facts exist that give rise to a vacancy, a school board may violate a member’s rights or that Brown’s and Orozco’s rights were not violated in this case.  On the contrary, we recognize that school board members may have property rights in their positions and that their rights may, on occasion, be inappropriately violated.  See 
East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel
, 178 Ill. 2d 399, 416 (1997).  However, our holding is limited to the specific questions before us: whether the School Code and Election Code authorized the Board to determine whether facts existed that gave rise to vacancies in Brown and Orozco’s seats on the Board. 
We answer the inquiry before us in the affirmative. 

Affirmed. 

QUINN, P.J., and CAMPBELL, J., concur.