THIRD DIVISION
December 28, 2007

No. 1-07-0621

| | | |
|---|---|---|
| CIRCLE MANAGEMENT, LLC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06M1722987 |
| | ) | |
| BEVERLY OLIVIER, | ) | The Honorable |
| | ) | Sheldon C. Garber, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Beverly Olivier appeals a trial court order granting possession of her apartment to plaintiff Circle Management, LLC. (Circle Management) as a sanction for her failure to pay use and occupancy charges during the pendency of Circle Management's forcible entry and detainer action brought under the Illinois Forcible Entry and Detainer Act (Act) (735 ILCS 5/9-101 et seq. (West 2004)). On appeal, Beverly asserts that the trial court lacked both the statutory and inherent authority to grant Circle Management possession under the Act as a sanction for her inability to make use and occupancy payments absent any consideration of the underlying merits of Circle Management's possession claim. We reverse.

On November 11, 2005, Beverly and her husband Collins Olivier executed a lease for apartment 801 located at 5718 N. Winthrop in Chicago. The lease required the Oliviers to pay $800 per month in rent on the first day of every month. On September 20, 2006, Circle

Management, lessor of the Oliviers' apartment, filed a complaint against Beverly and Collins.[1] The complaint alleged that starting August 1, 2006, Beverly and Collins failed to make their monthly rental payments and that Circle Management was owed $2,450 in back rent. Accordingly, the complaint sought possession of, and back rent for, the Oliviers' apartment. Beverly responded with a general appearance and a jury demand. She continued residing there with her two children during the pendency of Circle Management's forcible entry and detainer action.

On October 11, 2006, the court entered an agreed order establishing a pretrial filing schedule. In pertinent part, the agreed order granted Circle Management "fourteen (14) days, to and including October 25, 2006, to file a Motion for Use and Occupancy." On October 26, 2006, one day after the deadline set forth in the agreed order, Circle Management filed a motion for a use and occupancy award. In the motion, Circle Management asserted its belief that "[d]efendants plan on asserting a counterclaim against Plaintiff which will delay a speedy resolution to this matter and prevent Plaintiff from regaining possession of the premises in time to rent the premises for the winter to new tenants" and sought a court order requiring Beverly to make regular use and occupancy payments during the pendency of the case.

On November 30, 2006, the trial court entered an agreed order reached by the parties, which called for Beverly to pay Circle Management $800 a month beginning December 14, 2006, for use and occupancy of the apartment. Beverly, however, failed to make her first use and

---

[1] Although Beverly's husband was named a defendant in Circle Management's complaint, he was not involved in litigation in the trial court and is not a party to this appeal.

occupancy payment. Accordingly, on December 20, 2006, Circle Management filed a motion for immediate possession, asserting that it was entitled to possession of Beverly's apartment as a result of her failure to comply with the agreed use and occupancy order.

Beverly filed a response objecting to the propriety of Circle Management's motion, stating: "While [Circle Management] identifies no statute, regulation, ordinance or rule of court upon which it bases this request, defendant presumes that [Circle Management] is seeking a finding that Mrs. Olivier is in contempt of court, and asking this Court to award possession as a sanction for Mrs. Olivier's alleged contempt. *** [Circle Management] has not provided defendant with adequate notice of the type of contempt it seeks, nor is a finding of contempt warranted, as it is impossible for Mrs. Olivier to comply with this Court's order." Accordingly, Beverly requested the court to deny Circle Management's motion.

Thereafter, on January 5, 2006, the trial court conducted a hearing on Circle Management's motion for immediate possession. Beverly informed the court that she had not paid the use and occupancy charges ordered by the court because she did not have the funds to comply with the order. She explained that her husband had left her in September or August of 2006 and had not provided her with any income or child support following his departure. Moreover, Beverly testified that she was currently unemployed, but that was she was actively seeking employment. When asked by the trial court why she entered into the November 30, 2006, agreed order to make monthly use and occupancy payments, Beverly explained that she had believed she would be able to receive revenue from various charities, but that the money had not been forthcoming. The parties stipulated that Beverly's failure to comply with the use and

occupancy order was not willful.

Thereafter, Beverly's counsel addressed the court and challenged the validity of the practice of granting possession under the Act to a lessor as a sanction for a lessee's inability to pay use and occupancy charges. Counsel argued that the sanction Circle Management urged the court to impose did not constitute a valid contempt sanction. Specifically, counsel maintained that the sanction was not a valid criminal contempt sanction because Beverly did not act wilfully; moreover, counsel asserted, the sanction could not be classified as a valid civil contempt sanction because Beverly's ability to purge the contempt order was limited. The court responded, "Somebody should take it up to the courts and get us some guidelines," and granted Circle Management's motion for immediate possession "as a sanction" for Beverly's nonpayment of use and occupancy charges. The court further stated that the possession order could be "purged by paying the use and occupancy" by January 31, 2006, and stayed the proceedings until that date. The trial court then set a trial date for February 26, 2007, "in the event it becomes necessary." The trial court did not hear any evidence concerning the merit of Circle Management's underlying possession claim. Moreover, the trial court did not specify the authority on which it relied in imposing the sanction.

On January 29, 2006, Beverly filed a motion to clarify the court's January 5, 2006, possession order. The motion sought clarification as to "whether [the order] was a final judgment as to the disputed issue of possession, or a temporary order pending the disposition of the matter, at which time possession could revert to [Beverly] if she is successful at the trial stage." In her motion to clarify, Beverly also indicated that she sought "to appeal the Order at this time, under

Illinois Supreme Court Rule 304(a), so that further guidance on the issues surrounding an award of immediate possession from failure to pay use and occupancy may be sought from the Illinois Appellate Court."

On February 14, 2007, the trial court entered an order in response to Beverly's motion, confirming that the possession order "was entered as a sanction pursuant to Plaintiff's request for failure to pay use and occupancy." The court also amended the order "to include a finding pursuant to Supreme Court Rule 304(a) that there is no just reason for delaying enforcement or appeal or both." Beverly filed a timely notice of appeal.

On appeal, Beverly asserts that the possession order was entered contrary to law, because the trial court lacks the statutory authority to award a landlord possession of a residence under the Act when a tenant is unable to comply with a use and occupancy order without considering the underlying merits of the landlord's possession claim. Moreover, she asserts that this practice cannot be upheld as a valid exercise of the trial court's inherent authority to sanction.

The Legal Assistance Foundation of Metropolitan Chicago (LAF), the Lawyers' Committee for Better Housing (LCBH), Cabrini-Green Legal Aid (CGLA) and the Northwestern University School of Law Bluhm Legal Clinic (Bluhm Clinic) (collectively amici), each of which provides free legal services to low-income tenants facing evictions, have filed an amici curiae brief in support on Beverly. In their brief, the amici assert that the practice of awarding possession to landlords when tenants fail to comply with use and occupancy orders without hearing evidence concerning the merits of the underlying possession claim is "prevalent" at the Daley Center. Specifically, the amici state in their brief that the trial court "holds approximately five hearings a

5

week on motions for sanctions for the tenant's failure to make [use and occupancy] payments. Approximately one tenant a week is evicted as a result of these sanction hearings." The amici dispute the propriety of this prevalent practice because it relieves landlords of their statutory obligation to prove their right to possession under the Act.

Initially, we must determine whether we have jurisdiction to entertain Beverly's appeal or whether her appeal should be dismissed as moot. Following the entry of the possession order, Beverly moved out of the apartment. Thereafter, at oral argument, Circle Management's counsel informed the court that the apartment had subsequently been leased to another tenant.

Although neither party challenged our jurisdiction, a reviewing court has a duty to consider its jurisdiction sua sponte. Emery v. Northeast Illinois Regional Transportation Co., 374 Ill. App. 3d 974, 977 (2007). As a rule, "[t]he existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." In re Marriage of Nienhouse, 355 Ill. App. 3d 146, 149 (2004), citing Steinbrecher v. Steinbrecher, 197 Ill. 2d 514, 523 (2001). A case becomes moot where it is impossible to render effective relief to the appealing party. Berlin v. Sarah Bush Lincoln Health Center, 179 Ill. 2d 1, 7 (1997). For example, " 'an appeal is moot if a specific property, possession or ownership of which is the relief sought on appeal, has been conveyed to third parties.' " Cosmopolitan National Bank of Chicago v. Nunez, 265 Ill. App. 3d 1012, 1015 (1994), quoting Town of Libertyville v. Moran, 179 Ill. App. 3d 880, 886 (1989); Poulos v. Reda, 165 Ill. App. 3d 793, 798 (1987) (declining to exercise jurisdiction over a forcible entry and detainer appeal because "the defendants can no longer be placed in possession of the premises").

6

However, pursuant to the "public interest" or "public policy" exception to the mootness doctrine, a reviewing court may address an otherwise moot issue "if it involves a question of great public interest." In re A Minor, 127 Ill. 2d 247, 257 (1989); see also In re Christopher K., 217 Ill. 2d 348, 358-59 (2005). To determine whether the exception applies, a reviewing court must evaluate three factors, including: "(1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will recur." In re Andrea F., 208 Ill. 2d 148, 156 (2003). In order for an issue to fall within the confines of the public interest exception, "[a]ll three factors must be clearly shown." Brown v. Johnson, 362 Ill. App. 3d 413, 417 (2005).

In this case, we find that the public interest exception applies. First, the question of whether a trial court may award a landlord possession under the Act as a sanction for the tenant's inability to comply with a use and occupancy order is one of public importance, affecting the rights of countless landlords and tenants in Illinois. Moreover, there is a need for an authoritative determination on this issue. At oral argument, both parties confirmed the accuracy of the statistics cited in the amici curiae brief submitted in this case, which reveal that this particular practice is "prevalent." In addition, the trial court's instruction to Beverly's trial counsel to "take it up to the courts and get us some guidelines" when he challenged this practice indicates a need for an authoritative determination as to the propriety of this practice. Finally, because this current practice is so prevalent, it is likely to continue to recur absent any authority to the contrary. Accordingly, based on a review of these factors, we find that the public interest exception to the mootness doctrine applies, and we will address the merits of Beverly's appeal.

We turn first to Beverly's argument that the trial court's sanction was not authorized by the Act.

The Act sets forth a mechanism for the peaceful adjudication of possession rights in the trial court (Perry v. Evanston Young Men's Christian Ass'n, 92 Ill. App. 3d 820, 823 (1981)) and "provide[s] the complete remedy for settling disputes about real property" (Chicago Transit Authority v. Clear Channel Outdoor, Inc., 366 Ill. App. 3d 315, 325 (2006); see also People v. Evans, 163 Ill. App. 3d 561, 564-65 (1987) (recognizing that the Act provides the sole means of settling disputes between landlords and tenants)). Because the Act is a derogation of common law, courts must strictly comply with the procedure outlined in the statute. First National Bank of Evergreen Park v. Chrysler Realty Corp., 168 Ill. App. 3d 784, 791 (1988).

Although not acknowledged by either party, section 9-201 of the Act permits a party who brings a forcible entry and detainer action to recover use and occupancy charges pending resolution of the possession claim. 735 ILCS 5/9-201 (West 2004). Use and occupancy awards are authorized under the Act because "[a] lessee's obligation to pay rent continues as a matter of law, even though the lessee may ultimately establish a right to rescind the lease, vacate the premises, or obtain other relief." People ex rel. Department of Transportation v. Cook Development Co., 274 Ill. App. 3d 175, 180 (1995). There is no language in section 9-201, however, that expressly permits a trial court to award a landlord possession following a lessee's failure to pay the statutorily authorized use and occupancy charges. Moreover, Beverly is correct that there is "no * * * provision [anywhere in the Act] that authorizes sanctions for non-payment of rent pending trial."

8

In addition to the absence of statutory authority explicitly providing for such a sanction, Beverly maintains that the sanction imposed in her case was impermissible because it "defie[d] the well-considered procedural framework of the [Act]." Specifically, Beverly asserts that the Act places the burden on the plaintiff to establish its right to possession and permits the defendant named in the plaintiff's forcible entry and detainer action to present any germane defenses and have the case tried by a jury. Accordingly, she maintains that the trial court's order defied the Act's statutory scheme because it relieved Circle Management of its statutory obligation to establish its right to possession and deprived her of her statutory rights to present defenses and have the case tried and decided on the merits.

"The distinct purpose of the forcible entry and detainer proceeding is to determine only who should be in rightful possession." Miller v. Daley, 131 Ill. App. 3d 959, 961 (1985). Under the Act, it is the party asserting its right to possession who bears the burden of proof (Harper Square Housing Corp. v. Hayes, 305 Ill. App. 3d 955, 963 (1999); City of Chicago v. Airline Canteen Service, Inc., 64 Ill. App. 3d 417, 435 (1978)) and must establish its right to possession by a preponderance of the evidence. 735 ILCS 5/9-109.5 (West 2004). If the plaintiff fails to meet this burden, the Act provides that "judgment for costs shall be entered in favor of the defendant." 735 ILCS 5/9-114 (West 2004). The defendant in forcible detainer action has the right to assert any germane defenses in response to the plaintiff's possession claim. 735 ILCS 5/9-106 (2004) ("The defendant may under a general denial of the allegations of the complaint offer in evidence any matter in defense of the action"); Rosewood Corp. v. Fisher, 46 Ill. 2d 249, 255 (1970). Moreover, the Act recognizes that both parties have the right to have the dispute

tried by a jury. 735 ILCS 5/9-108 (West 2004) ("In any case relating to premises used for residence purposes, either party may demand a trial by jury"); Twin–City Inn, Inc. v. Hahne Enterprises, Inc., 37 Ill. 2d 133, 137-38 (1967).

Circle Management does not dispute that the trial court entered the possession order in this case without hearing any evidence concerning any affirmative defense Beverly may have had in response to its forcible entry and detainer action. However, Circle Management denies that Beverly was "deprive[d] * * * of her right to present any germane defenses" because she waived her right to do so when she "made no attempt to file an answer to the complaint let alone raise any affirmative defenses or any counterclaims" at any time in the circuit court. Circle Management's argument, however, is not well taken because Illinois Supreme Court Rule 181(b)(2) provides that "[i]n actions for forcible detainer * * * the defendant must appear at the time and place specified in the summons. If the defendant appears, he or she need not file an answer unless ordered by the court; and when no answer is ordered, the allegations of the complaint will be deemed denied, and any defense may be proved as if it were specifically pleaded." 210 Ill. 2d R. 181(b)(2).

In this case, Beverly filed a general appearance, but did not file an answer or assert any affirmative defense. However, Beverly was never ordered to do so. Accordingly, pursuant to Rule 181(b)(2), her appearance acted as a denial to the claims raised in Circle Management's complaint, and she was permitted to raise any defenses thereafter. 210 Ill. 2d. R. 181(b)(2). Moreover, it appears that Beverly intended to raise an affirmative defense at trial. Specifically, in response to Circle Management's interrogatory questions, Beverly indicated that she believed she

was wrongfully evicted because "[t]he landlord breached the implied warranty of habitability," which is a germane affirmative defense to a landlord's possession claim. See, e.g., Pole Realty Co. v. Sorrells, 84 Ill. 2d 178, 182 (1981); Richardson v. Wilson, 46 Ill. App. 3d 622, 623-24 (1977).

Circle Management also does not dispute that the trial court entered the order without hearing any evidence concerning the underlying merits of its possession claim. Accordingly, Beverly maintains that the trial court's failure to abide by the provisions of the Act invalidates the sanction. In support, she cites our previous holding in Eckel v. MacNeal, 256 Ill. App. 3d 292 (1993), where we reversed a trial court order granting a landlord possession of an apartment because the trial court never considered the merits of the possession claim. She contends that Eckel "dealt with the very issue presented in this case" and necessarily "compels reversal."

In Eckel, a landlord brought an action under the Act against its tenant due to the tenant's failure to pay rent, and in response, the tenant filed a number of affirmative defenses and counterclaims. Thereafter, the trial court entered an order requiring the tenant to pay use and occupancy charges and informed the tenant that failure to comply with the order would result in immediate possession in favor of the landlord. The tenant failed to comply, and accordingly, the trial court entered judgment in favor of the landlord. Eckel, 256 Ill. App. 3d at 293-95. On appeal, the tenant challenged the possession order, arguing that it deprived her of her right to a trial. Eckel, 256 Ill. App. 3d at 296. Initially, we noted that forcible entry and detainer actions could be resolved without conducting a trial if the trial court considered the merits of the underlying possession claim and entered judgment on the pleadings or summary judgment. Eckel, 256 Ill. App. 3d at 297-98. However, we found that the record revealed that the trial court failed

11

to abide by any of these procedures. Accordingly, we held that its failure to do so resulted in a void judgment, stating:

> "This court is fully aware that forcible detainer and entry claims are adjudicated in a high volume court. (See Pecoraro v. Kesner, 217 Ill. App. 3d 1039, 1043 (1991)). However, this fact does not alter plaintiff's burden of proof. In this case, plaintiff was able to obtain a judgment against defendant without following the most basic procedural requirements of a trial, summary judgment or judgment on the pleadings. The proceedings presented in the record here cannot be called due process. Given the facts and circumstances of this case, this court is forced to conclude that the judgment entered against defendant is void." Eckel, 256 Ill. App. 3d at 298.

Similarly, in this case, the trial court granted Circle Management possession without considering the underlying merits of its possession claim. Accordingly, as in Eckel, the order was entered "without following the most basic procedural requirements of a trial, summary judgment or judgment on the pleadings." Eckel, 256 Ill. App. 3d at 298. Although the trial court did provide Beverly with the opportunity to purge the order by paying the requisite use and occupancy charges and set a trial date "in the event it [became] necessary," Beverly was unable to make the payments, and possession was awarded to Circle Management. Accordingly, the result of the sanction was that Circle Management was able to obtain possession of the apartment without establishing its right to possession. Clearly, the process utilized in this case to resolve Circle Management's forcible entry and detainer action did not comply with the express procedural protections set forth in the Act or with due process.

In so finding, we are sensitive to the plight faced by landlords in Circle Management's situation that have filed a complaint pursuant to the Act following a tenant's nonpayment of rent and are unable to collect use and occupancy payments during the pendency of their actions due to the tenant's inability to pay. We realize that landlords depend upon rental payments to satisfy their mortgage payments and other monetary obligations. These valid concerns notwithstanding, it is incumbent upon a landlord that brings an action under the Act to prove that it is entitled to possession. The trial court may not grant possession under the Act merely because a tenant is unable to comply with a use and occupancy order. As we explained in Eckel, due process requires that the underlying possession claim be resolved in conformance with the procedural requirements of trial, summary judgment, or judgment on the pleadings. Eckel, 256 Ill. App. 3d at 298. Accordingly, at the very least, when the trial court held a hearing and determined that Beverly failed to comply with the use and occupancy order, she was entitled to a hearing on the underlying possession claim before possession was granted to Circle Management.

Circle Management makes no express attempt to distinguish Eckel, but insists that the order entered in this case was proper because a trial court has the inherent authority to sanction. While Beverly agrees that courts have inherent authority to impose sanctions to punish for contempt or in response to a party's failure to abide by its orders as a means to control its docket, she maintains that the sanction imposed in this case exceeded any inherent authority the trial court may have had. Specifically, Beverly first maintains that the order exceeded the trial court's inherent authority to impose a contempt sanction because the sanction imposed in this case does not constitute a valid judgment of criminal or civil contempt.

Courts have inherent authority to punish a party for contempt. See People v. Warren, 173 Ill. 2d 348, 370 (1996) ("The power to punish for contempt does not depend on constitutional or legislative grant"); see also Del Dotto v. Olsen, 257 Ill. App. 3d 463, 464 (1993); In re Estate of Miller, 197 Ill. App. 3d 67, 73 (1990). " 'Contempt of court has been defined as any act that is calculated to embarrass, hinder, or obstruct a court in the administration of justice, or that is calculated to lessen its authority or dignity.' " Levaccare v. Levaccare, No. 1-06-1224, slip op. at 8 (September 17, 2007), quoting People v. Budzynski, 333 Ill. App. 3d 433, 438 (2002). Contempt can either be criminal or civil (Emery v. Northeast Illinois Regional Transportation Co., 374 Ill. App. 3d 974, 977 (2007)), as well as indirect or direct (Levaccare, slip op. at 8; Eden v. Eden, 34 Ill. App. 3d 382, 388 (1975)).

Criminal contempt sanctions are punitive in nature and require a finding that the contemptuous conduct was wilful. People v. Minor, 281 Ill. App. 3d 568, 574 (1996); People v. Ernest, 141 Ill. 2d 412, 422 (1990). In contrast, civil contempt is prospective in nature, and is " 'designed to compel future compliance with a court order.' " Emery, 374 Ill. App. 3d at 977, quoting In re Marriage of Sharp, 369 Ill. App. 3d 271, 279 (2006). Although a court may enforce an order to pay money through contempt, this power is "limited to cases of wilful refusal to obey the court's order." In re Marriage of Logston, 103 Ill. 2d 266, 285 (1984). Accordingly, " '[i]t is not a contempt of court to fail to pay money which one neither has nor can obtain and which [s]he has not causelessly either put out of [her] hands or failed to receive.' " Shapiro v. Shapiro, 113 Ill. App. 2d 374, 388 (1969), quoting White v. Adolph, 305 Ill. App. 76, 79 (1940).

In this case, Beverly's failure to comply with the use and occupancy order stemmed from

14

her insolvency and inability to pay rather than wilful defiance of the agreed order. Indeed, the parties stipulated, and the court found, that Beverly's actions were not wilful. Accordingly, Beverly's lack of wilfulness precludes a finding that the court's order constitutes a valid contempt order. Logston, 103 Ill. 2d at 287.

Circle Management agrees that "none of the procedures for any kind of contempt were followed in this case," but maintains that "the possession order is not a contempt order." Instead, Circle Management asserts that the sanction entered in this case was a valid exercise of the trial court's inherent authority to sanction a party who fails to abide by its orders. Beverly concedes that courts have such inherent authority but asserts that the sanction imposed in this case, which essentially resulted in a default judgment against her, cannot be upheld as a valid exercise of this inherent authority.

It is well-recognized that trial courts have inherent authority to impose sanctions against a party that fails to abide by valid court orders. Sander v. Dow Chemical Co., 166 Ill. 2d 48, 67 (1995); Smith v. City of Chicago, 299 Ill. App. 3d 1048, 1054 (1988). A sanction imposed for violation of a trial court order, however, must be reasonable and responsive to the facts and circumstances of each case. Smith, 299 Ill. App. 3d at 1054. "[S]anctions which result in a default judgment are drastic sanctions and should only be employed when it appears that all other enforcement efforts of the court have failed to advance the litigation." Sander, 166 Ill. 2d at 67-68. Moreover, such sanctions are only appropriate "where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority." Shimanovsky v. General Motors Corp., 181 Ill. 2d 112, 123 (1998).

15

1-07-0621

In this case, the sanction imposed by the trial court as a result of Beverly's failure to comply with the use and occupancy order essentially resulted in a default judgment against her. We cannot say that Beverly's failure to pay the use and occupancy charges constituted a deliberate or contumacious disregard of authority. Moreover, we do not find that the sanction imposed was reasonable and responsive to the facts in the case at bar. Here, due to Beverly's inability to make payments and comply with the use and occupancy order, Circle Management was given possession of the apartment in which she resided, without satisfying its statutory obligation to prove its right to possession under the Act. Accordingly, we do not find that the sanction imposed in this case can be upheld as a valid exercise of a trial court's inherent authority to sanction.

Circle Management, however, also argues that the possession order in this case was lawful because it stemmed from the trial court's inherent authority to act sua sponte.

Circle Management, citing People v. Anderson, 352 Ill. App. 3d 934, 943 (2004), asserts that the trial court has the inherent power to act sua sponte as long as it provides the parties notice and an opportunity to respond. Accordingly, Circle Management argues that trial court acted within its inherent power to act sua sponte because Beverly was provided with "notice and opportunity to respond to the court's motion" and she attended the hearing on the motion.

We find this argument unpersuasive. While courts do have the inherent authority to act sua sponte (see People v. Vincent, 226 Ill. 2d 1, 24 (2007)), the motion for immediate possession was filed by Circle Management and not initiated by the court. Accordingly, the order was not imposed pursuant to the trial court's inherent authority to act sua sponte.

16

1-07-0621

For the foregoing reasons, we hold that the trial court erred when it granted possession of the property to Circle Management pursuant to the Act as a sanction for Beverly's inability to comply with the use and occupancy order absent any consideration of the merits of Circle Management's possession claim. The trial court's order defied the procedural framework and due process guarantees of the Act and cannot be upheld as a valid exercise of a court's inherent authority to sanction.

Because we can resolve Beverly's appeal on these grounds, we need not address her argument that the sanction entered in this case violated the due process and separation of powers provisions set forth in the Illinois Constitution. See Bonaguro v. County Officers Election Board, 158 Ill. 2d 391, 396 (1994) (recognizing that a court should consider constitutional questions only when "the case cannot be determined on other grounds").

Accordingly, we reverse the judgment of the trial court.

Reversed.

QUINN, P.J., and CUNNINGHAM, J., concur.