# Illinois Official Reports

## Appellate Court

---

*Capron Rescue Squad District v. North Boone Fire Protection District No. 3,*
**2019 IL App (2d) 190355**

---

| | |
|---|---|
| Appellate Court Caption | THE CAPRON RESCUE SQUAD DISTRICT, d/b/a North Boone EMS, Plaintiff-Appellant, v. THE NORTH BOONE FIRE PROTECTION DISTRICT No. 3; HEATH MORRAL, President and Trustee; LAWRENCE PIKORA, Trustee; and MIKE WINNE, Trustee, Defendants (The North Boone Fire Protection District No. 3, Defendant-Appellee). |
| District & No. | Second District<br>No. 2-19-0355 |
| Filed | December 27, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 19-CH-14; the Hon. John H. Young, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James Hursh, of DeRango & Cain, LLC, of Rockford, for appellant.<br><br>Stephen H. DiNolfo and Ericka J. Thomas, of Ottosen Britz Kelly Cooper Gilbert & DiNolfo, Ltd., of Naperville, for appellees. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices McLaren and Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, the Capron Rescue Squad District (North Boone EMS), appeals the dismissal of count I of its declaratory judgment complaint, wherein it sought a construction of section 22(a) of the Fire Protection District Act (Fire Protection Act) (70 ILCS 705/22(a) (West 2018)). The trial court ruled that section 22(a) does not require a finding that adequate ambulance services do not currently exist before a fire protection district may submit a ballot question proposing a tax for such services. We affirm.

¶ 2                    I. BACKGROUND

¶ 3    North Boone EMS is a rescue squad district that provides ambulance services to northern Boone County. Defendant, North Boone Fire Protection District No. 3 (Fire District No. 3), is a fire protection district that provides fire protection and ambulance services in and around Poplar Grove, which is also located in northern Boone County. The boundaries of Fire District No. 3 are entirely within the area also serviced by North Boone EMS.

¶ 4    On December 3, 2018, the Board of Trustees of Fire District No. 3 (Board)[1] adopted ordinance No. 2018-3 (the ordinance). The ordinance included findings by the Board that it was "necessary and in the best interests" of the residents of Fire District No. 3 that a new tax be levied for the purpose of providing ambulance services. The ordinance directed that the question of the new tax be put to the voters at the April 2, 2019, "consolidated election" in the following form:

> "Shall the North Boone Fire Protection District No. 3, Boone County, Illinois, be authorized to levy a new tax for ambulance purposes and have an additional tax of .01% of the equalized assessed value of the taxable property therein extended for such purposes?"

On that same day, the Board submitted the ordinance to Julie Stapler, Boone County clerk, who added the question as a ballot measure in the April 2 election.

¶ 5    On January 25, 2019, North Boone EMS filed a three-count complaint seeking (1) a declaratory judgment that section 22 of the Fire Protection Act requires a finding that adequate ambulance services do not currently exist before a fire protection district may add a ballot question proposing a new tax for ambulance services, (2) a permanent injunction prohibiting Fire District No. 3 from submitting such a ballot question and providing ambulance services that do not arise from fire protection services, and (3) a finding that the ordinance was void

---

[1] Also named as defendants in the complaint were individual Board members Heath Morral, Lawrence Pikora, and Mike Winne. The trial court dismissed all counts as to these individual defendants. North Boone EMS lists these individuals as appellees in the caption of its brief, but it names only Fire District No. 3 as appellee in the body of its brief. Moreover, North Boone EMS does not appeal the ruling dismissing these individuals as defendants. Accordingly, they are not parties to this appeal.

because one of the members of the Board did not live in Boone County when the Board approved the ordinance.

¶ 6        In count I, North Boone EMS asserted that section 22(a)(3) of the Fire Protection Act (70 ILCS 705/22(a)(3) (West 2018)) requires a finding that there is not "adequate and continuing service" as a condition precedent to authorizing a ballot measure seeking a new tax. North Boone EMS alleged that it currently provided adequate ambulance service in the area served by Fire District No. 3 and that, consequently, Fire District No. 3 failed to follow the proper procedure for placing the question on the ballot.

¶ 7        On February 25, 2019, Fire District No. 3 filed a motion for an extension of time "to properly answer or otherwise plead." At a hearing on March 8, 2019, over North Boone EMS's objection, the court granted Fire District No. 3's motion. The transcript of the March 8 hearing is not part of the record, but it is clear from the transcript of a later hearing that North Boone EMS represented to the court that early voting had not yet begun and would not begin before the next scheduled hearing. The court gave Fire District No. 3 until March 22, 2019, to file its answer or other pleading. The court set a status hearing for that same date, under the apparent belief that none of the issues in the complaint would by then have been rendered moot by the start of the election.

¶ 8        On March 20, 2019, Fire District No. 3 filed a motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)), and it also filed a memorandum of law in support of the motion. It argued that North Boone EMS did not have standing to bring the complaint and that there was no "actual controversy," because section 22(a) of the Fire Protection Act was "merely a statement of public policy," not a limitation on its authority to place a question on an election ballot.

¶ 9        At the outset of the March 22 hearing, North Boone EMS's attorney confessed to the court: "When I was here last time, I misspoke. The election had started." We take judicial notice of the official records of Boone County, which indicate that early voting started on March 8 for the April 2 election. See *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 22 n.1 (courts may take judicial notice of an authorized election and its results). The court indicated that it would permit the parties to argue their respective cases but that it would not be ruling by a date certain prior to the election, since voting had already started. Fire District No. 3 stated that it had relied on North Boone EMS's previous representation that the election would not have started by the date of the hearing. Accordingly, Fire District No. 3 explained that it did not include a mootness argument in its memorandum of law but that it now wished the court to consider whether an election that had already begun could be enjoined. Fire District No. 3 briefly argued that North Boone EMS did not have standing and that there was no actual controversy because at issue was simply one taxing body impacting another taxing body's potential stream of revenue. North Boone EMS responded that a controversy did exist because the plain language of section 22(a), which requires a finding that adequate ambulance services do not exist before a ballot question can propose a new tax for such services, put the parties at odds.

¶ 10       The court took the matter under advisement and, after noting that it would not be enjoining an election that had already begun, set a hearing on its decision for April 12, 2019. At that hearing, the court read its findings into the record.

¶ 11       With respect to count I, Fire District No. 3 argued that North Boone EMS lacked standing because North Boone EMS had no interest in property tax rates levied by Fire District No. 3.

The court noted that the ordinance, drafted by Fire District No. 3, specifically referenced section 22(d), which authorizes a fire protection district to limit the number of ambulance services in the district. The court found that Fire District No. 3's ability to limit ambulance services would directly impact North Boone EMS's interests, and it granted standing on that basis, notwithstanding Fire District No. 3's property tax argument.[2]

¶ 12        As to whether there was a legal controversy, the court focused on what it termed the "crux" of the issue, the construction of sections 22(a) and 22(b) of the Fire Protection Act (70 ILCS 705/22(a), (b) (West 2018)). The court found that section 22(a) states that it is a "matter of public policy" (ILCS 705/22(a) (West 2018)) and that the declarations contained therein are aspirational policy pronouncements. Moreover, section 22(b), which authorizes fire protection districts to place questions on election ballots, does not condition the authority with limiting language such as "after a finding pursuant to (a)(3)" or "after a finding of no adequate services under (a)(3)." See 70 ILCS 705/22(b) (West 2018). The court noted that the legislature could have required a formal finding of no adequate services if it had intended for section 22(a) to be a limitation on section 22(b), but that it did not include any such language. Therefore, the court held that section 22(a) is not a condition precedent and that section 22(b) does not require a determination that adequate ambulance services do not exist before a proposed tax may be placed on the ballot. The court dismissed count I with prejudice.

¶ 13        At the time of the hearing, the vote in the April 2 election had not been certified, but 10 days had passed since the close of voting. The court stated that the "unofficial" result was that the new tax was approved.[3] The court explained that, even before an election, a court should be "loath to interfere" with a political function. Thus, as count II of the complaint sought injunctive relief to prevent a referendum in an election that was now closed, the court dismissed count II with prejudice.

¶ 14        As to count III, the court found that even if, as North Boone EMS alleged, one of the Board members was not a resident of Boone County, the ordinance was still legally approved. The ordinance passed by a vote of three to zero, and two Board members constituted a quorum. Thus, even if one Board member's vote was void, there was still a quorum and a majority vote in favor of the ordinance. The court dismissed count III with prejudice. North Boone EMS timely appealed.

¶ 15                                        II. ANALYSIS
¶ 16        North Boone EMS appeals only the dismissal of count I of its complaint, where it sought a declaratory judgment that section 22(a) of the Fire Protection Act requires a finding that adequate ambulance services do not exist before a fire protection district may add a ballot question proposing a new tax for such services. North Boone EMS argues that the court erred by failing to apply the plain meaning of the words in section 22(a) and by not reading the statute as a whole.

---

[2]Fire Protection District No. 3 does not challenge the trial court's finding of standing based on the ordinance's reference to section 22(d); thus, we will not address it.

[3]We take judicial notice of the public records of Boone County, which indicate that the official result of the election was 610 votes in favor of the new tax and 368 votes opposed. *Jackson*, 2012 IL 111928, ¶ 22 n.1.

¶ 17                                    A. Mootness

¶ 18        Before directing our attention to the merits of this appeal, we find it necessary to address the question of mootness. A case must remain a legal controversy from the time that it is filed in the appellate court until the moment the court enters its disposition. *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 45. "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004). Even when neither party challenges our jurisdiction, as is the case here, we have a duty to consider our jurisdiction *sua sponte*. *Emery v. Northeast Illinois Regional Transportation Co.*, 374 Ill. App. 3d 974, 977 (2007); see also *Tirio v. Dalton*, 2019 IL App (2d) 181019, ¶ 21 (mootness raises a question of jurisdiction that we must determine at the outset).

¶ 19        The conclusion of an election cycle ordinarily renders an election contest moot, as the occurrence of the election prevents the court from granting effective relief. *Jackson*, 2012 IL 111928, ¶ 36. However, an otherwise moot question may still be considered in a case involving a "question of great public interest." (Internal quotation marks omitted.) *Circle Management, LLC v. Olivier*, 378 Ill. App. 3d 601, 607 (2007). The public interest exception to the mootness doctrine applies where (1) the question presented is of a public nature, (2) an authoritative resolution is desirable for the purpose of guiding public officers, and (3) the question is likely to recur. *Jackson*, 2012 IL 111928, ¶ 44.

¶ 20        In *Jackson*, our supreme court considered a challenge to whether the City of Chicago lawfully included a person on the ballot in an election. Shortly after Carmelita Earls filed nomination papers for her aldermanic bid in the city, Eileen Jackson filed a petition objecting to her candidacy, based on alleged violations of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2010)). *Jackson*, 2012 IL 111928, ¶ 10. After hearing evidence, a hearing officer concluded that Jackson failed to demonstrate that Earls was ineligible to seek office and he recommended that Earls remain on the ballot. *Jackson*, 2012 IL 111928, ¶ 16. The board of election commissioners adopted the findings of the hearing officer, and the trial court confirmed the decision of the board of election commissioners. *Jackson*, 2012 IL 111928, ¶¶ 17-18. The appellate court, however, determined that Earls indeed violated the Illinois Municipal Code, and it reversed the decision of the trial court. By the time our supreme court agreed to hear the case, the election had already taken place, rendering the question moot. *Jackson*, 2012 IL 111928, ¶¶ 19-21. The supreme court applied the public interest exception to the mootness doctrine, noting first that questions regarding election law are inherently a matter of public concern. *Jackson*, 2012 IL 111928, ¶ 44. Moreover, the court determined that this question was likely to recur and that a resolution to the question would guide election officials and lower courts in promptly resolving such disputes in future elections. *Jackson*, 2012 IL 111928, ¶ 44.

¶ 21        The reasoning of *Jackson* applies here. In January 2019, North Boone EMS timely challenged whether a question could legally appear on the ballot in an upcoming election. The election took place even before the trial court resolved that challenge, and thus the issue is moot. See *Jackson*, 2012 IL 111928, ¶ 36. However, as the question involves election law, it is inherently a matter of public concern. *Jackson*, 2012 IL 111928, ¶ 44. Moreover, reasonable legal minds are likely to continue to differ on the effect of section 22, and this question is likely to recur in future elections. See *Jackson*, 2012 IL 111928, ¶ 44. Thus, a ruling by this court

will aid election officials and lower courts in promptly deciding such disputes in the future. See *Jackson*, 2012 IL 111928, ¶ 44. Accordingly, the public interest exception to the mootness doctrine applies, and we have jurisdiction to consider the merits of this appeal.

¶ 22                                           B. Section 22

¶ 23        North Boone EMS argues that section 22(a)'s language "clearly and unambiguously" sets forth the lack of adequate existing ambulance services as a condition precedent to adding a ballot question proposing a new tax to fund additional ambulance services. North Boone EMS contends that logic dictates, and the statute requires, that citizens should not be asked to approve a tax for services that they already enjoy without the tax. Not surprisingly, Fire District No. 3 disagrees, arguing that section 22(a) is merely an "aspirational" statement of "public policy" and that subsequent sections of the Fire Protection Act grant the Board the authority to certify ballot questions without the limitations argued for by North Boone EMS.

¶ 24        The parties agree that this case involves an issue of statutory interpretation, which we review *de novo*. *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 11. Neither party cites any case construing section 22 of the Fire Protection Act, and we have likewise found no such cases. Thus, this case presents an issue of first impression.

¶ 25        We begin by examining the content of section 22 of the Fire Protection Act, which reads as follows:

> "§ 22. The Board of Trustees of any fire protection district incorporated under this Act is authorized under the terms and conditions hereinafter set out, to provide emergency ambulance service ***[,] to levy a tax for the provision of such service[,] and to adopt rules and regulations relating to ambulance service within their jurisdiction.
>
> (a) It is declared as a matter of public policy:
>
>     (1) That, in order to preserve, protect and promote the public health, safety and general welfare, adequate and continuing emergency ambulance service should be available to every citizen of Illinois;
>
>     (2) That, insofar as it is economically feasible, emergency ambulance service should be provided by private enterprise; and
>
>     (3) That, in the event adequate and continuing emergency ambulance services do not exist, fire protection districts should be authorized to provide, and shall cause to be provided, ambulance service as a public responsibility.
>
> (b) Whenever the Board of Trustees of a fire protection district desires to levy a special tax to provide an ambulance service, it shall certify the question to the proper election officials, who shall submit that question at an election to the voters of the district. ***
>
> (b-5) On and after the effective date of this amendatory Act of the 98th General Assembly [(August 12, 2013)], whenever the Board of Trustees of a fire protection district desires to levy a special tax to provide an ambulance service, it shall certify the question to the proper election officials, who shall submit that question at an election to the voters of the district. ***
>
> (c) [If approved by voters, a special tax for ambulance services shall be in addition to other taxes levied by a fire protection district.]

(d) Any Board of Trustees may:

1. Provide or operate an emergency ambulance service;

2. Contract with a private person, hospital, corporation or another governmental unit for the provision and operation of emergency ambulance service or subsidize the service thereof;

3. Limit the number of ambulance services[.]

* * *

(e) [Applies to tax levies approved by voters prior to January 1, 1978].” 70 ILCS 705/22 (West 2018).

¶ 26    The fundamental rule of statutory interpretation is to give effect to the legislature's intent, which we ascertain by first considering the plain language of the statute. *Hendricks*, 2015 IL App (3d) 140858, ¶ 14. If the language is clear and unambiguous, we do not deviate from that language by inferring limitations or conditions that the legislature did not set forth. *Hendricks*, 2015 IL App (3d) 140858, ¶ 14.

¶ 27    North Boone EMS asks us to focus on a phrase in the first sentence of section 22, which states that fire protection districts are authorized to provide ambulance services "under the terms and conditions hereinafter set out." 70 ILCS 705/22 (West 2018). North Boone EMS reasons that section 22(a)(3) sets forth one of those terms and conditions by authorizing emergency ambulance services only when "adequate and continuing emergency ambulance services do not exist." 70 ILCS 705/22(a)(3) (West 2018). At the hearing on the motion to dismiss, North Boone EMS argued that section 22(a)(3) requires a "finding" that adequate ambulance services do not exist. North Boone EMS did not explain how a fire protection district would arrive at such a finding, but it did argue that it was providing adequate ambulance services, which proscribed Fire District No. 3 from placing the question on the ballot. Accordingly, North Boone EMS concludes that the trial court erred because it improperly rendered section 22(a)(3) "superfluous [and] meaningless." See *Fandel v. Allen*, 398 Ill. App. 3d 177, 179 (2010).

¶ 28    Section 22 is a comprehensive statutory scheme that authorizes fire protection districts to seek funding for ambulance services. If funding is approved, the statute empowers fire protection districts to provide ambulance services and to adopt rules and regulations relating to the operation of those services. Section 22 outlines much of this in its first sentence, where it states that its purpose is to authorize fire protection districts, subject to voter approval; to provide ambulance services; and to create rules and regulations that govern those services. 70 ILCS 705/22 (West 2018).

¶ 29    Section 22(a) immediately follows the purpose statement, and it explains the reasoning behind the statutory scheme. It declares that it is a matter of "public policy" that (1) ambulance services "should be" available to every citizen of Illinois, (2) ideally, those services "should be" provided by private enterprise, and (3) in the event that adequate ambulance services are not otherwise provided, fire protection districts "should be" authorized to provide such services. To determine the meaning of section 22(a), we must look to the plain meaning of the words used in that section. The Fire Protection Act contains no "definitions" section, so it is entirely appropriate to look to a dictionary for the plain meaning of words and phrases. See *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 347 (2005) (relying on Webster's Third New International Dictionary and Black's Law Dictionary to ascertain the plain meaning of

words used in a statute). The plain meaning of "public policy" includes "principles and standards regarded by the legislature or by the courts as being of fundamental concern to the state and the whole of society." Black's Law Dictionary 1267 (8th ed. 2004). The conditional verb phrase, "should be," is defined by Webster's as that which "ought to be." Webster's Third New International Dictionary 2104 (1993). Thus, the term "public policy," as used in section 22(a), announces that what follows are principles of fundamental concern to the legislature, and each particular itemized concern is stated as a thing that "ought to be" as a matter of policy. The trial court aptly noted that these were "aspirational" statements. In light of these definitions, it is clear that the legislature wished to express that ambulance services are fundamental to the health, safety, and general welfare of the citizens of Illinois. Further, the legislature wanted to convey that (1) citizens ought to have access to emergency ambulance services and (2) where economically feasible, private enterprise ought to fill the need for ambulance services, but when it does not, (3) fire protection districts ought to be permitted to do so. The legislature identified its overall objective in the first paragraph of section 22 and then set forth its reasoning in section 22(a). Essentially, it recognized that there was a need to be filled, and it outlined how in the sections that followed.

¶ 30 The remaining sections, 22(b) through 22(e), detail the specific processes of the statutory scheme, such as when and where to submit a ballot question, the maximum tax rate allowable, and a fire protection district's authority to create regulations relating to ambulance services. For example, section 22(b-5) provides, *inter alia*, that the board of trustees of a fire protection district may, whenever it desires, submit the question of a new tax for ambulance service to the proper election officials, who then cause the question to be added to an election ballot. 70 ILCS 705/22(b-5) (West 2018). Additionally, section 22(d) elucidates that, following voter approval of the tax, the board of trustees may (1) provide ambulance services, (2) contract for ambulance services, (3) limit the number of ambulance services in its district, (4) fix and collect fees for its ambulance services, and (5) establish regulations for ambulance services. 70 ILCS 705/22(d) (West 2018).

¶ 31 Not found in any of the sections is language requiring formal findings of fact regarding the adequacy of ambulance services in a fire protection district before it may add a ballot question proposing a new tax for such services. North Boone EMS suggested at oral argument that the Illinois Department of Public Health (IDPH) would be in a position to make such findings, as it collects and provides statewide data for prehospital emergency services. Even if we accept North Boone EMS's argument that the IDPH is capable of determining the adequacy of ambulance services in a particular district, North Boone EMS is asking that we find fault for failing to comply with a requirement that does not exist. The statute is silent in this regard, and we will not infer limitations or conditions that the legislature did not set forth. *Hendricks*, 2015 IL App (3d) 140858, ¶ 14.

¶ 32 Accordingly, we conclude that sections 22(b) through 22(e) contain specific directives and authorizations designed to fulfill the more general aspirational "public policy" objectives outlined in section 22(a). In the business of statutory interpretation, it is the specific and not the general or aspirational direction that controls. See *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002) (where there exists a general statutory provision and a specific statutory provision relating to the same subject, either in the same act or in another act, the specific provision controls). Thus, we read sections 22(b) through 22(e) as granting a fire protection district the authority to place a question on a ballot without first complying with the

general aspirational objectives found in section 22(a). Certainly, fire protection districts should be mindful of the objectives in section 22(a) during their good faith deliberations regarding ballot questions, but there exists no requirement that they must first arrive at any formal finding of fact concerning those objectives. This interpretation preserves the meaning of the objectives called for in section 22(a) while also giving force to the unambiguous operative language found in subsequent sections.

¶ 33                                III. CONCLUSION

¶ 34        For the foregoing reasons, the judgment of the circuit court of Boone County is affirmed.

¶ 35        Affirmed.