NO. 4-05-0381          **Filed: 1/26/06**

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE CITY OF QUINCY, an Illinois Municipal Corporation, | ) ) | Appeal from Circuit Court of |
|      Plaintiff-Appellee, | ) | Adams County |
|      v. | ) | No. 99MR62 |
| DONALD L. WEINBERG, | ) | |
|      Defendant-Appellant. | ) ) ) ) | Honorable Mark A. Schuering, Judge Presiding. |

_____

_____

PRESIDING JUSTICE TURNER delivered the opinion of the court:

In September 1999, plaintiff, the City of Quincy, filed a complaint and application for injunctive relief against defendant, Donald L. Weinberg, alleging municipal-code violations relating to fire prevention, housing, and zoning, along with the maintenance of a nuisance on his real property. In October 1999, the trial court entered a default judgment. After years of monitoring defendant's compliance with its orders, the court found defendant in indirect criminal and civil contempt in October 2004. In April 2005, the court required defendant to divest himself of title to the real estate as a sanction for his contempt.

On appeal, defendant argues the trial court erred in (1) sanctioning him based upon a void judgment, (2) denying his motion for substitution of judge, (3) finding him in indirect criminal and civil contempt, and (4) ordering him to sell his home. We affirm in part, reverse in part, and remand with directions.

## I. BACKGROUND

On August 1, 1999, plaintiff served a notice of intention to inspect defendant's property in Quincy.  On August 18, 1999, plaintiff filed a petition for warrant to search and inspect the property, claiming the structure located thereon constituted a dangerous building and violated fire, maintenance, and housing codes.  On August 19, 1999, Judge Dennis K. Cashman recused himself, and Judge Mark A. Schuering was assigned to hear the case.  That same day, Judge Schuering held a hearing on plaintiff's petition, and defendant, a license attorney, appeared pro se.  Over defendant's objection, the trial court granted plaintiff's petition and ordered the inspection to take place on August 23, 1999.

In September 1999, plaintiff filed a complaint and application for injunctive relief.  Plaintiff alleged defendant maintained a nuisance in violation of the municipal code (count I), violated fire-protection codes (count II), violated housing standards (count III), and his "primary use of the premises [as] a warehouse and salvage yard" violated zoning ordinances (count IV).  On October 20, 1999, the trial court entered a default judgment against defendant.

On October 27, 1999, defendant filed a motion for substitution of judge, stating Judge Schuering had made no substantive ruling in the case and was or may have been prejudiced against him.  Also, defendant filed a motion to continue and a motion to vacate the default judgment.

At a hearing on various motions for both sides, the trial court indicated it had contacted defendant on August 19, 1999, in an attempt to notify defendant about the proceedings and defendant appeared.  The court indicated it had made a

substantive ruling and denied the motion for substitution of judge. The court also denied the motions to continue and vacate the default judgment.

On the City's motion for the assessment of fines, sanctions, and other equitable relief, the trial court found the property was zoned residential. The court found "overwhelming evidence" that the property was being utilized as a warehouse or a storage facility. The court stated it sought to take "an aggressive approach" to get defendant into compliance through the granting of injunctive relief and the assessment of fines. The court ordered defendant to remove all items improperly maintained on the premises by November 24, 1999, and fined defendant $400 ($100 on each count).

In November 1999, the trial court conducted a status hearing on its prior order. Plaintiff indicated an interior and exterior inspection of the premises was taken to determine the level of compliance. The court's immediate concern was the potential fire hazard inside the house. The court ordered defendant to clear the stairwells for ingress and egress, and if it was not completed the court would order the City to send a crew in and place the items in storage at defendant's cost. The court required exterior items to be removed within 28 days, and any items defendant believed had uses consistent with the residential character of the property should be tagged to notify City officials.

In December 1999, the trial court conducted a compliance-review hearing. The court found defendant in substantial compliance as to counts II and III, although reasonable grounds existed for the court to enjoin further actions by defendant in violation of the City's fire-prevention and housing codes. Also, the court found defendant was not in substantial compliance as to counts I and IV. The court ordered the $400 in fines on all four counts remain in full force and effect. Further, the $100-per-

count fines on counts I and IV were to be imposed retroactively to November 29, 1999, totaling $4,600 and subject to abatement upon full compliance with the court's previous orders.

In January 2000, the trial court conducted a status- review hearing. The court found defendant substantially complied with its previous orders. The court stated the $4,600 in fines and penalties were to remain in full force and effect and assessed an additional $2,800 in fines.

On January 18, 2000, plaintiff filed an amended complaint and application for injunctive relief, adding counts V and VI pertaining to alleged zoning violations. The complaint alleged two outdoor privies served no permitted use under the municipal code and a nonilluminated device mounted on a steel shed violated the municipal code. In February 2000, defendant failed to appear at the status hearing, and the trial court entered a default judgment as to counts V and VI. The court ordered defendant to remove the wooden privies and the signage by March 10, 2000.

In April 2000, defendant again failed to appear at the compliance hearing. The trial court found defendant failed to comply with the housing-code provisions under count III and failed to remove the wooden privies and signage. Failure to remove the privies and signage resulted in a fine of $4,000. The previous fines remained in full force and effect to be paid by May 5, 2000. Also, if defendant failed to remove the privies and signage by April 25, 2000, plaintiff had leave to enter the property and remove the structures with defendant responsible for the costs of removal and storage.

In May 2000, defendant failed to appear. The trial court found defendant had made some progress toward compliance as to repairs to the soffit and eves under

count III. The privies and signage had been removed from the premises, although both outbuildings were placed on a flat-bed truck parked on the street. The court required defendant to remove all items located on or adjacent to the driveway not directly related to the repairs of the exterior of the residence.

In June 2000, plaintiff filed a motion for the $462.15 cost of removing the outbuildings. In July 2000, defendant failed to appear. The trial court found defendant had deposited further items on the property in violation of the court's previous orders. The court entered judgment against defendant for the $462.15 cost of removal. The court also listed numerous items to be removed from the premises and allowed plaintiff to enter the property to execute the court's orders.

In November 2000, the trial court found that although "a great deal of progress" had been made, it could not "turn a blind eye and permit a residentially zoned property" to become a de facto storage facility. The court ordered defendant to make various repairs to the house and remove and store certain items, including a casket and a portable jail cell. In January 2001, the court granted plaintiff's motion for approval of costs of $33,141.34. In February 2001, defendant paid the judgment.

In September 2001, plaintiff filed a petition for rule to show cause, claiming defendant had willfully allowed the "further accumulation of yard waste, rubbish, garbage[,] and other refuse on the exterior of the premises" and used his own vehicles to store and maintain yard waste and refuse. In October 2001, the trial court found defendant in contempt of court for willful violation of the court's prior orders. The court gave plaintiff the authority to enter the premises to remove a brush pile and certain items under the carport. The court enjoined defendant from any harassment of

neighbors and ordered him to undergo a psychological assessment.

In December 2001, the trial court entered a consent order agreed on by the parties in lieu of plaintiff seeking contempt sanctions against defendant. The parties agreed defendant would hire an assistant in overseeing the overall maintenance of defendant's property to ensure compliance with provisions of the municipal code pertaining to the regulation of nuisances, housing and building standards, and fire and zoning codes. In March 2002, defendant's assistant indicated he would no longer be so employed.

In April 2002, the trial court allowed defendant time to find a new assistant. Although not requested by plaintiff, the court instructed defendant that his failure to comply with the court's orders could result in the "ultimate sanction" of a public sale of the property. In May 2002, defendant indicated he selected a new assistant. In December 2002, the court found defendant in violation of a nuisance ordinance in that the lawn growth exceeded the maximum height limitation and ordered him to pay $360 for the services rendered by plaintiff. Defendant paid the amount in February 2003.

In August 2003, plaintiff filed a petition for rule to show cause, alleging defendant has "once again willfully allowed the accumulation on or about the exterior of the premises" of large amounts of miscellaneous construction materials, salvaged items, refuse and miscellaneous personal property items, along with "a profusion of foliage." In November 2003, the trial court dismissed the petition without prejudice after the parties stipulated defendant had taken steps to come into compliance with the court's orders.

In October 2004, the trial court conducted a "hearing on rule to show

cause."  Dr. Michael Gadson, a psychiatrist, opined based on a reasonable degree of medical certainty that defendant suffered from severe obsessive-compulsive disorder and secondarily from attention deficit hyperactivity disorder.  Dr. Gadson stated defendant also suffered from major depression and was being treated with medication.  Dr. Gadson opined that defendant had not willfully violated the court's orders but instead his actions were a function of his illness.  The court found the evidence demonstrated beyond a reasonable doubt that defendant willfully disobeyed the court's previous orders and permanent injunction.  The court found defendant in indirect criminal and civil contempt.

In November 2004, the trial court conducted a hearing on the imposition of sanctions.  As a sanction, the court ordered defendant to divest himself of title and ownership of the real estate.  In lieu of divestiture, the court indicated it would consider a request by defendant that would bar virtually all future placement of personal goods and items on the property with certain exceptions.  In December 2004, defendant filed a motion for reconsideration, which the court denied.

In April 2005, defendant's attorney informed the trial court that defendant was not willing to agree not to bring items of personal property to his home.  The court then ordered defendant to divest himself of title to the real estate within 60 days.  If defendant failed to do so, the court would appoint a receiver to prepare the real property for sale.  This appeal followed.  In May 2005, the trial court granted defendant's motion to stay enforcement of its order.

## II. ANALYSIS

### A. Default Judgment

Defendant argues the trial court erred in predicating its sanctions upon a default judgment that was void because plaintiff's complaint and application for injunctive relief failed to state a cause of action. We disagree.

> "[A] defendant may raise at any time a claim that the
> complaint fails to state a cause of action. [Citations.]
> However, this exception applies only when a complaint fails
> to state a recognized cause of action. The exception does
> not apply where the complaint states a recognized cause of
> action, but contains an incomplete or otherwise insufficient
> statement of that cause of action." Adcock v. Brakegate,
> Ltd., 164 Ill. 2d 54, 61-62, 645 N.E.2d 888, 893 (1994).

In this case, plaintiff filed a complaint and application for injunctive relief, alleging multiple violations of the municipal code of the City of Quincy. Each allegation cited section 11-31-2 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/11-31-2 (West 1998)), and noted the municipality may make application to the trial court for an injunction requiring compliance with its ordinances. Further, plaintiff asked that defendant be found guilty of a petty offense, fined as provided by the municipal code, and enjoined from maintaining such a nuisance or condition and requiring him to comply with the ordinances.

We find plaintiff's complaint properly alleges a cause of action. Section 11-31-2(a) of the Municipal Code (65 ILCS 5/11-31-2(a) (West 1998)) provides as follows:

> "If the appropriate official of any municipality

determines, upon due investigation, that any building or structure therein fails to conform to the minimum standards of health and safety as set forth in the applicable ordinances of such municipality, and the owner or owners of such building or structure fails, after due notice, to cause such property so to conform, the municipality may make application to the circuit court for an injunction requiring compliance with such ordinances or for such other order as the court may deem necessary or appropriate to secure such compliance."

The complaint set forth facts alleging defendant maintained a nuisance or unsafe conditions in violation of municipal ordinances. The complaint also indicated defendant received due notice of the violations. Thus, we find the complaint set forth a cause of action, and defendant cannot now argue on appeal that the complaint fails to do so.

We also find defendant's reliance on <u>Village of Schaumburg v. Kingsport Village, Inc.</u>, 122 Ill. App. 3d 85, 460 N.E.2d 800 (1984), misplaced. In that case, the village of Schaumburg (village) sought a mandatory injunction against the defendant developers. <u>Schaumburg</u>, 122 Ill. App. 3d at 86, 460 N.E.2d at 801. The village maintained an ordinance allowing for criminal sanctions against builders or developers for violating the ordinance in constructing or making repairs. <u>Schaumburg</u>, 122 Ill. App. 3d at 87, 460 N.E.2d at 801-02. The appellate court found that although the village filed a complaint against the developers, it failed to pursue the prosecution to final judgment. <u>Schaumburg</u>, 122 Ill. App. 3d at 88, 460 N.E.2d at 802. Until the village could prove

the criminal penalties would not prompt the developers to act, an injunction should not issue. Schaumburg, 122 Ill. App. 3d at 88, 460 N.E.2d at 802. As to the homeowners in the case, however, the appellate court noted the village could have used section 11-31-2 of the Municipal Code "to secure a mandatory injunction against a property owner who fails, after notice, to correct ordinance violations on his property." Schaumburg, 122 Ill. App. 3d at 88, 460 N.E.2d at 802.

Here, plaintiff used section 11-31-2 of the Municipal Code in an attempt to find defendant guilty of a petty offense and enjoin him from violating various ordinances on his property. Plaintiff therefore has pursued the available statutory remedy designed to enforce compliance with its ordinances.

### B. Motion for Substitution of Judge

Defendant argues the trial court erred in denying his motion for substitution of judge. We disagree.

A party is entitled to one substitution of judge without cause as a matter of right. 735 ILCS 5/2-1001(a)(2) (West 1998). The trial court must grant a motion for substitution of judge if it is presented "before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case" (735 ILCS 5/2-1001(a)(2)(ii) (West 1998)). "A substantial ruling is one that directly relates to the merits of the case." In re Estate of Gay, 353 Ill. App. 3d 341, 343, 818 N.E.2d 860, 862 (2004).

In this case, plaintiff filed its petition for warrant to search and inspect on August 18, 1999. The next day, Judge Cashman recused himself and Judge Schuering was assigned to hear the case. Also on August 19, Judge Schuering held a hearing

wherein defendant appeared pro se and granted plaintiff's petition over defendant's objection. On September 15, 1999, plaintiff filed its complaint and application for injunctive relief. Defendant was served with summons on September 19, 1999. On October 20, 1999, defendant failed to appear, and the court found him in default on all four counts of plaintiff's complaint. On October 27, 1999, defendant filed a motion for substitution of judge.

We find the trial court's default judgment amounted to a substantial ruling in this case. The ruling directly related to the merits of the case, that being the allegations in the complaint filed by plaintiff. Thus, defendant's motion for substitution of judge was not timely filed.

Defendant also complains the trial court failed to rule on his motion for substitution of judge for cause. An application for substitution of judge for cause must be made by a petition, "setting forth the specific cause for substitution and praying a substitution of judge" (735 ILCS 5/2-1001(a)(3)(ii) (West 1998)). "In order to be entitled to a hearing before another judge on whether a substitution for cause is warranted, the motion must allege grounds that, if taken as true, would justify granting a substitution for cause." Alcantar v. Peoples Gas Light & Coke Co., 288 Ill. App. 3d 644, 649, 681 N.E.2d 993, 996 (1997).

Here, defendant alleged Judge Schuering "is or may be prejudice[d]." Defendant offered no specific allegations on his reasons for claiming Judge Schuering was or may have been prejudiced against him. At both the trial and appellate levels, defendant has failed to set forth any specific facts to establish bias or prejudice on the part of Judge Schuering. Thus, the trial court properly denied defendant's motion for

substitution of judge.

C. Indirect Criminal and Civil Contempt of Court

Defendant argues the trial court erred in finding him in indirect criminal and civil contempt. We agree.

### 1. Indirect Criminal Contempt

"Indirect criminal contempt proceedings must generally conform to the same constitutionally mandated procedural requirements as other criminal proceedings. One charged with indirect criminal contempt is entitled to '"*** know the nature of the charge against him, to have it definitely and specifically set forth by citation or rule to show cause, and *** [have] an opportunity to answer ***."' [Citation.] Also applicable to a respondent in an indirect criminal contempt proceeding are the privilege against self-incrimination, the presumption of innocence, and the right to be proved guilty beyond a reasonable doubt. ***

Because a respondent in an indirect criminal contempt proceeding enjoys the privilege against self-incrimination, he may not be called by the petitioner to testify. Accordingly, a petition initiating indirect criminal contempt proceedings ought not have the title 'Petition for Rule To Show Cause,' the designation commonly (and appropriately) used for a petition initiating an indirect civil

contempt proceeding; instead, a petition initiating an indirect criminal contempt proceeding ought to have the title 'Petition for Adjudication of Criminal Contempt.' By definition, if a respondent has a right not to testify, he cannot be required to 'show cause' why he should not be held in indirect criminal contempt. Instead, the burden is on the petitioner to prove the charges in the petition beyond a reasonable doubt. An ancillary benefit of using such a title would be to force court and counsel into a recognition that such petitions differ from routine petitions for rules to show cause and require different procedural steps." (Emphasis in original.) In re Marriage of Betts, 200 Ill. App. 3d 26, 58-59, 558 N.E.2d 404, 425 (1990).

In In re Marriage of Alltop, 203 Ill. App. 3d 606, 616, 561 N.E.2d 394, 401 (1990), this court held "due process requires that before criminal sanctions may be imposed upon a respondent as a result of indirect criminal contempt proceedings, notice must be provided to the alleged contemnor that such sanctions are being sought and might be imposed." Thus, "a pleading entitled 'petition for rule to show cause' is not sufficient to provide the due process to which an alleged criminal contemnor is entitled." Alltop, 203 Ill. App. 3d at 616, 561 N.E.2d at 401. Instead, the due-process "requirement can be met by entitling the initial pleading, 'petition for adjudication of criminal contempt.'" Alltop, 203 Ill. App. 3d at 616, 561 N.E.2d at 401.

In the case sub judice, plaintiff did not file a petition for adjudication of

criminal contempt in August 2003.  Instead, it filed a petition for rule to show cause,
which the trial court later dismissed without prejudice.  Thus, any proceeding purporting
to find defendant in indirect criminal contempt failed to comport with the requirements of
due process.  The court therefore erred in finding defendant in indirect criminal
contempt.

Moreover, we point out that at the hearing in which the trial court held
defendant in indirect criminal contempt, plaintiff's only evidence came from defendant's
testimony as an adverse witness.  In this type of proceeding, "the burden is on the
petitioner to prove the charges in the petition beyond a reasonable doubt."  Betts, 200
Ill. App. 3d at 59, 558 N.E.2d at 425.  Further, a defendant cannot be required to "'show
cause' why he should not be held in contempt.  This amounts to an impermissible
shifting of the burden of proof."  People v. Ramsell, 266 Ill. App. 3d 297, 301, 640
N.E.2d 975, 978 (1994).  Here, plaintiff called defendant as an adverse witness.  A
defendant in an indirect criminal contempt proceeding has a right, inter alia, to the
privilege against self-incrimination.  People v. Budzynski, 333 Ill. App. 3d 433, 439, 775
N.E.2d 275, 281 (2002).  As a criminal action was not initiated against defendant, the
trial court's order of indirect criminal contempt must be vacated.

### 2. Indirect Civil Contempt

Before a defendant may be sanctioned for indirect civil contempt, he or
she must be "accorded due process of law with respect to the contempt charges."
Betts, 200 Ill. App. 3d at 52, 558 N.E.2d at 421.  "In a civil contempt proceeding, the
contemnor is only entitled to minimal due process, consisting of notice and an
opportunity to be heard."  In re Marriage of Cummings, 222 Ill. App. 3d 943, 948, 584

˅ 14 ˅

N.E.2d 900, 903 (1991). "The notice must, of course, contain an adequate description of the facts on which the contempt charge is based and inform the alleged contemnor of the time and place of an evidentiary hearing on the charge within a reasonable time in advance of the hearing." Betts, 200 Ill. App. 3d at 53, 558 N.E.2d at 422.

In this case, plaintiff filed a petition for rule to show cause in August 2003, asking the trial court to require defendant to show cause why he should not be held in contempt of court for failure to obey and adhere to the court's previous orders. In November 2003 and by agreement of the parties, the court dismissed the petition for rule to show cause without prejudice and granted plaintiff leave to reinstate the petition in the future, if necessary. In April 2004, the court held a status-review hearing and ordered defendant to paint his garage and remove a plow/disk and iron cart/tray from the premises. In July 2004, the court held a status-review hearing and continued the matter for later review on whether defendant painted his garage and removed at least one boat from the premises. In September 2004, the court entered an order continuing a review of its July 2004 order and notifying defendant that in October 2004 he "shall appear in person and show cause why he should not be held in contempt of court for failure to obey the court's previous orders regarding the accumulation of items on the residential property." In October 2004, the court found defendant willfully disobeyed its previous orders and was in indirect criminal and civil contempt.

Based on a review of the record, no petition for rule to show cause was properly before the trial court since the court dismissed the August 2003 petition. A "petition for a rule to show cause initiates the contempt proceedings" (In re Marriage of LaTour, 241 Ill. App. 3d 500, 508, 608 N.E.2d 1339, 1345 (1993)), and the notice must

adequately describe the facts on which the contempt charge is based (Betts, 200 Ill. App. 3d at 53, 558 N.E.2d at 422). As no petition existed here, defendant could not have had the notice of a contempt proceeding required by due process nor have been aware of the facts upon which a contempt finding might be based. Further, it is unclear which previous court orders defendant was required to "show cause" about at the October hearing. Without adequate notice, the court erred in finding defendant in indirect civil contempt, and defendant's contempt citations must be reversed.

### D. Sale of Home

Although we reverse the trial court's findings of contempt and remand for further proceedings, we find it necessary to comment on the court's order requiring defendant to divest himself of title and ownership to his house as a sanction for the contempt, since a similar situation could present itself in the future. This case has had a long history, beginning in 1999 with plaintiff's complaint alleging defendant's house violated nuisance ordinances and various municipal codes pertaining to fire, housing, and zoning standards. With the exception of some outside repair work, the initial focus centered on the interior of the home, with massive accumulations of property impeding ingress and egress to and from the home and acting as a possible danger to fire fighters and surrounding homes in the unfortunate event of a residential conflagration.

Over time, the trial court found defendant in compliance in certain areas, and plaintiff's focus turned more toward the outside of the home. Piles of logs, church bells, wooden privies, wagon wheels, shovels and brooms, a rendering cauldron/flower pot, and even a casket have become issues undertaken by the court. It was also discovered that defendant suffers from obsessive-compulsive disorder and tends to

horde items he has purchased at auctions. Needless to say, defendant likes his items of property situated in their own special way. It became unclear over time, however, which items constituted a nuisance and which items plaintiff or the court thought should not be on the property because of aesthetic reasons. One man's garbage may be another man's treasure, and orders to remove items should clearly point out the reasons for doing so, i.e., to lessen the risks to public health and safety, to allow reasonable access to emergency personnel, or to abate a hazardous or dangerous condition.

For its part, the trial court indicated its dislike for "micromanaging" the various issues in the case and found obtaining defendant's compliance like "pulling teeth." After trying different avenues of sanctions against defendant, the court warned him his ownership of the property could be in jeopardy. The court was correct that an order divesting defendant of his property would be "carefully scrutinized by any appellate court" and would amount to a "drastic" and "radical" sanction.

While we sympathize with the trial court's attempt to force defendant's compliance and we compliment the court in its attempt to find professional help for defendant and his disorder, the forced sale of a citizen's home is the ultimate in judicial sanctions. The takings clauses of the United States and Illinois Constitutions evince the firm and well-settled prohibition on government taking the private property of its citizens without just compensation. See U.S. Const., amend. V; Ill. Const. 1970, art. I, §15. Compelling the sale of one's home by judicial decree should command no less scrutiny. It has been said that "'the house of every one is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose'" (Wilson v. Layne, 526 U.S. 603, 609, 143 L. Ed. 2d 818, 827, 119 S. Ct. 1692, 1697 (1999), quoting

˘ 17 ˘

Semayne's Case, (1604) 77 Eng. Rep. 194, 195 (K.B.)), and the sacrosanct right of property ownership must be rigidly protected. Although a question existed as to whether defendant lived in the home, in another, or in both, the forced sale of one's home based on what a city, state, or court considered a nuisance, excessive, or in poor taste is a sanction subject to grave abuses.

"It is well established that the courts are vested with an inherent power to punish for contempt as essential to maintain their authority and to administer and execute judicial power." Central Production Credit Ass'n v. Kruse, 156 Ill. App. 3d 526, 531, 509 N.E.2d 136, 139 (1987). "The inherent power of contempt is a powerful one; it is not to be used lightly nor when other adequate remedies are available; if it is used, it must conform strictly to the dictates of the law.'" In re Johnson, 134 Ill. App. 3d 365, 378, 480 N.E.2d 520, 530 (1985), quoting People v. Mowery, 116 Ill. App. 3d 695, 704, 452 N.E.2d 363, 370 (1983).

While we have no doubt the trial court's intentions here were good, the forced sale of one's residence to, in effect, ensure compliance with the court's orders was not a viable option. The United States Supreme Court has stated that "'in selecting contempt sanctions, a court is obliged to use the "least possible power adequate to the end proposed."'" Spallone v. United States, 493 U.S. 265, 276, 107 L. Ed. 2d 644, 656, 110 S. Ct. 625, 632 (1990), quoting United States v. City of Yonkers, 856 F.2d 444, 454 (2nd Cir. 1988), quoting Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 231, 5 L. Ed. 242, 248 (1821). The court was of the belief that jail time and monetary fines had been inadequate sanctions for defendant. However, we fail to see how judicial eviction was the "least possible power" adequate to the proposed end. A review of the record does

not indicate continued removal by plaintiff of defendant's "illegal" property at defendant's cost could not achieve the necessary result.

## III. CONCLUSION

For the reasons stated, we affirm in part, reverse in part, and remand for further proceedings.

Affirmed in part and reversed in part; cause remanded for further proceedings.

STEIGMANN and KNECHT, JJ., concur.