SIXTH DIVISION

No. 1-07-0550

|  |  |  |
|---|---|---|
|  | ) |  |
| FILIP ROTHEIMER, | ) | Appeal from the |
|  | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois, |
|  | ) | Municipal Department. |
|  | ) |  |
|  | ) | No. 06 M1 725603 |
| v. | ) |  |
|  | ) | Honorable |
| OSCAR ARANA and MARIA RIVERA, | ) | Sheldon Garber, |
|  | ) | Judge Presiding. |
| Defendants-Appellants. | ) |  |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

The defendants, Oscar Arana and Maria Rivera, appeal a trial court order granting possession of their apartment to the plaintiff, Filip Rotheimer, as a sanction for their failure to pay use and occupancy charges during the pendency of the plaintiff's forcible entry and detainer action brought under the Illinois Forcible Entry and Detainer Act (Act) (735 ILCS 5/9-101 *et seq.* (West 2004)). On appeal, the defendants assert that the trial court lacked both statutory and inherent authority to grant the plaintiff possession under the Act as a sanction for their non-payment of use and occupancy payments absent any consideration of the underlying merits of the plaintiff's possession claim. The defendants alternatively argue that the possession order violated both the Illinois and federal constitutions. For the reasons that follow, we reverse.

## I. BACKGROUND

In March 2005, the defendants and their five children moved into an apartment located on

the ground floor of 949 West Lawrence Street in Chicago (the apartment). The defendants remained in the apartment through February 2007 pursuant to an oral month-to-month lease with the plaintiff. The lease required the defendants to pay $950 per month in rent on the seventh day of each month.

On October 17, 2006, pursuant to the Illinois Forcible Entry and Detainer Act (Act) (735 ILCS 5/9-101 *et seq.* (West 2004)), the plaintiff filed a complaint against the defendants, alleging that starting in September 2006, the defendants failed to make their rental payments and that the plaintiff was owed $1,900 in back rent. Accordingly, the complaint sought possession of, and back rent for, the defendant' apartment. On October 31, 2006, the defendants filed an appearance thought their attorney and demanded a jury trial. The defendants continued residing in the apartment with their five children during the pendency of the plaintiff's forcible entry and detainer action.

On November 1, 2006, the plaintiff filed a motion asking that the court order the defendants to pay monthly use and occupancy. In support of this motion, the plaintiff asserted that "in equity the defendants should be required to pay the agreed rental amount while [the] defendants' jury demand and this case remain pending." The defendants objected to the motion, contending that the trial court had no authority to order the payment of use and occupancy before considering the case on the merits, specifically because at trial they intended to raise, among other things, the affirmative defense of the plaintiff's breach of the warranty of habitability. In support of this argument, the defendants attached as exhibits photographs of the numerous defects in their apartment.

2

On December 12, 2006, the trial court heard arguments on the plaintiff's motion for use and occupancy. The sole issue considered by the trial court was the current condition of the apartment, so as to determine the "current market value" of the property. At this hearing, James McGinn, testified that he is the property manager of the apartment building located at 949 West Lawrence Street in Chicago, and that he lives in that building. According to McGinn, the defendants live in a two-bedroom apartment on the ground floor of 949 West Lawrence and have resided there for about two years. According to McGinn, the defendants regularly paid their rent until September 2006.

On cross-examination, McGinn stated that the last time he was in the defendants' apartment was on August 27, 2006, because repairs were required. McGinn testified that he gave the defendants "material [including paint and plaster] to fix the apartment" because "the husband *** is a contractor." According to McGinn the defendants did not fix the unit. McGinn further stated that when he then came to collect the rent, the defendants refused to pay him until he fixed the apartment. According to McGinn, there had been a hole in the ceiling in the bathroom, which he fixed, but the defendants now wanted him to "fix the whole place."

When asked if he observed any other problems in the apartment, McGinn stated that he did not have a list of all the defects. After being shown photographs of the premises, however, McGinn, acknowledged, among other things, that the state of the radiator was "unacceptable," that the ceiling was leaking, that there was a hole in the baseboard which appeared to be used by rodents, that paint was peeling from the inside of the kitchen cabinets, and that the basement was flooded. McGinn aslo stated that in October 2006, he had one of his men pump water out of the

3

defendants' basement.

One of the defendants, Maria Rivera, next testified that she has lived in the ground-floor apartment at 949 West Lawrence in Chicago for over two years. Maria then identified photographs of the apartment which were taken on two different occasions in October 2006 by her and her husband. When questioned about the current state of the premises, among other things, Maria testified that the window in the bathroom was not fixed but was merely painted over and that it was still rotting, that the bathroom fan was broken, that the walls behind the radiator were damp and peeling and had not been repaired, and that "they continued to have a rodent and cockroach infestation." Maria also testified that on numerous times prior to the litigation, she complained to the plaintiff about these problems and that on one occasions she even called the city inspectors.

After hearing arguments by both sides, the trial court entered an order granting the plaintiff's motion for use and occupancy. The trial court, however, found that based on the conditions of the apartment, the apartment mandated a 20% reduction in the rental price–$190. Thus, the court ordered the defendants to pay the plaintiff $760 per month use and occupancy while the litigation was pending, with all such payments to be made by the tenth day of each month, starting with January 10, 2007. In addition, the trial court required the defendants to pay use and occupancy dating back to when the motion for use and occupancy was originally filed (*i.e.*, November and December of 2006), ordering the defendants to pay this amount no later than December 31, 2006.

The defendants failed to make their use and occupancy payment. Accordingly, on

4

January 16, 2007, the plaintiff filed a one-sentence motion for "judgment for possession *instanter*" and for damages in the amount of $2,280 for defendants' failure to pay any use and occupancy payments as ordered by the trial court. The defendants filed a written response to this motion admitting that they did not pay the use and occupancy "as a means of testing the court's use and occupancy order" because "the plaintiff [has] continued to violate the Chicago Building Code, and has refused to make any of the repairs required by law to make their apartment comply with the minimum requirements of habitability."

On February 1, 2007, the trial court held a hearing on this motion. After hearing arguments from both sides, the trial court granted the plaintiff possession of the apartment as a sanction for the defendants' failure to pay use and occupancy pursuant to the court's order and denied the plaintiff's motion for monetary judgment without prejudice so that this part of the proceedings could be continued at a future date and the plaintiff could respond to discovery. The trial court then stayed the possession order until February 11, 2007.

At this point in the proceedings, counsel for the plaintiff inquired whether, if the monetary claim (for $2,280) was nonsuited, the case would be over, and the court responded that it would unless the defendants filed a counterclaim. The plaintiff immediately nonsuited the claim for damages. The defendants now appeal the trial court's order of possession.

## II. ANALYSIS

On appeal, the defendants first contend that the possession order was contrary to law, because the trial court lacked statutory authority to award a landlord possession of a residence under the Act when a tenant fails to comply with a use and occupancy order without considering

No. 1-07-0550

the underlying merits of the landlord's possession claim. In addition, the defendants assert that this practice cannot be upheld as a valid exercise of the trial court's inherent authority to sanction.

The Legal Assistance Foundation of Metropolitan Chicago (LAF), the Lawyer's Committee for Better Housing (LCBH), Cabrini-Green Legal Aid (CGLA), and the Northwestern University School of Law Bluhm Legal Clinic (Bluhm Legal Clinic) (collectively *amici*), each of which provides free legal services to low-income tenants facing evictions, have jointly filed an *amici curiae* brief in support of the defendants. In this brief, the *amici* assert that the practice of entering use and occupancy orders at the behest of landlords, and then awarding possession to landlords when tenants fail to comply with a use and occupancy order without hearing evidence concerning the merits of the underlying possession claim, is "prevalent" in the Daley Center. The *amici* contend that because of the five courtrooms in the Daley Center which handle eviction cases, only one handles the jury-trial call, and jury cases typically take longer than bench trials, motions for use and occupancy are regularly entertained in the jury trial courtroom. The *amici* approximate that the court holds "five hearings a week on motions for sanctions for the tenant's failure to make [use and occupancy] payments. Approximately one tenant a week is evicted as a result of these sanctions hearings." The *amici* further dispute the propriety of this prevalent practice because it relieves landlords of their statutory obligation to prove their right to possession under the Act.

On the other hand, the plaintiff contends that pursuant to our decision in People ex rel. Department. of Transportation v. Cook Development Co., 274 Ill. App. 3d 175, 188, 653 N.E.2d

6

843, 852 (1995), the trial court has statutory authority to order a tenant to pay use and occupancy, and thereby inherent authority to sanction the tenant if he/she fails to comply with the court's use and occupancy order.

The Chicagoland Apartment Association (CAA), an affiliate of the National Apartment Association, which advances the interests of the rental housing industry by providing education and legislative support for the benefit of its members, and TLC Management Co. (TLC), one of the largest single owners of apartment buildings in Cook County, both which have filed *amici curiae* briefs in support of the plaintiff, assert that because jury trials in forcible entry and detainer actions are often delayed and take more than several months and some even more than a year, it would be unfair to landlords to allow tenants to remain inside the premises during the pendency of these proceedings without requiring them to pay use and occupancy. Specifically, the *amici* assert that landlords depend upon rental payments to satisfy their mortgage payments and other monetary obligations, including among other things, real estate taxes, and that without the courts' granting of use and occupancy orders, and their enforcement of those orders through sanctions, many landlords would be unable to satisfy these obligations.

Notwithstanding these valid concerns by the *amici*, for the reasons that follow, we are compelled to disagree with plaintiff's position on appeal.

In that respect, we note that very recently in Circle Management, LLC v. Olivier, 378 Ill. App. 3d 601, 882 N.E.2d 129 (2007), this appellate court has had the opportunity to address and resolve the same issues raised here by the parties and that we must therefore be guided by that precedent in our resolution of the issues raised in this appeal.

No. 1-07-0550

In Circle Management, the defendant, Beverly Olivier, appealed the trial court's order granting possession of her apartment to the plaintiff, her landlord, Circle Managment as a sanction for her failure to pay use an occupancy charges during the pendency of the plaintiff's forcible entry and detainer action against her. Circle Management, 378 Ill. App. 3d at 604, 882 N.E.2d at 132.

The proceedings in that case began when Beverly, together with her husband, signed a lease for an apartment on Winthrop Street in Chicago by which she was required to pay $800 per month in rent. Circle Management, 378 Ill. App. 3d at 604, 882 N.E.2d at 132. About 11 months after Beverly signed the lease, her landlord filed a complaint against her pursuant to the Act alleging that she had failed to make her monthly rental payments for two months and that she owed the landlord back rent. Circle Management, 378 Ill. App. 3d at 604, 882 N.E.2d at 133. Accordingly, the plaintiff sought possession of, and back rent for, Beverly's apartment. Circle Management, 378 Ill. App. 3d at 604, 882 N.E.2d at 133. Beverly responded with a general appearance and a jury demand and continued to reside in the apartment with her two children during the pendency of the action. Circle Management, 378 Ill. App. 3d at 604, 882 N.E.2d at 133.

Subsequently, the trial court entered an agreed order establishing a pretrial filing schedule, which, among other things, granted the plaintiff 14 days to file a motion for use and occupancy. Circle Management, 378 Ill. App. 3d at 604, 882 N.E.2d at 133. The plaintiff then filed a motion for use and occupancy, and at a subsequent hearing, the trial court entered an agreed order reached by the parties, which called for Beverly to pay plaintiff $800 a month for

8

the use and occupancy of the apartment pending the trial proceedings. Circle Management, 378 Ill. App. 3d at 604-05, 882 N.E.2d at 133. When Beverly failed to make her first use and occupancy payment, however, the plaintiff filed a motion for immediate possession, asserting that it was entitled to possession of Beverly's apartment as a result of her failure to comply with the agreed to use and occupancy order. Circle Management, 378 Ill. App. 3d at 605, 882 N.E.2d at 133.

Beverly filed a response objecting to the propriety of that motion. Circle Management, 378 Ill. App. 3d at 605, 882 N.E.2d at 133. Thereafter, the trial court conducted a hearing on the plaintiff's motion for immediate possession. Circle Management, 378 Ill. App. 3d at 605, 882 N.E.2d at 133. At that hearing, Beverly informed the court that she had not paid the use and occupancy charges ordered by the court because she did not have the funds to comply with the order. Circle Management, 378 Ill. App. 3d at 605, 882 N.E.2d at 133. She explained that her husband had left her at the time when the complaint was filed by plaintiff and that he had not provided her with any income or child support when he left. Circle Management, 378 Ill. App. 3d at 605, 882 N.E.2d at 133. Beverly also testified that she was currently unemployed but that she was actively seeking employment. Circle Management, 378 Ill. App. 3d at 605, 882 N.E.2d at 133. Beverly further explained that she entered into the agreed order to make monthly use and occupancy payments because she had wrongly believed that she would receive money from various charities but that money had not been forthcoming. Circle Management, 378 Ill. App. 3d at 605, 882 N.E.2d at 133. The parties stipulated that Beverley's failure to comply with the use and occupancy order was not wilful. Circle Management, 378 Ill. App. 3d at 605, 882 N.E.2d at

No. 1-07-0550

133-34.

The trial court granted the plaintiff's motion for immediate possession as a sanction for Beverly's nonpayment of use and occupancy charges. Circle Management, 378 Ill. App. 3d at 606, 882 N.E.2d at 134. Beverly appealed, contending that the trial court had no authority to award the landlord possession as a sanction for her failure to pay use and occupancy without first considering the underlying merits of the landlord's possession claim under the Act. Circle Management, 378 Ill. App. 3d at 606, 882 N.E.2d at 134.

The appellate court agreed and held that the trial court had erred in granting possession of the property to the plaintiff pursuant to the Act as a sanction for Beverly's inability to comply with the use and occupancy order absent any consideration of the merits of plaintiff's possession claim. Circle Management, 378 Ill. App. 3d at 614, 882 N.E.2d at 141. The court in Circle Management specifically found that "the trial court's order defied the procedural framework and due process guarantees of the Act and [could not] be upheld as a valid exercise of a court's inherent authority to sanction." Circle Management, 378 Ill. App. 3d at 614, 882 N.E.2d at 141.

In coming to this conclusion, the Circle Management court first addressed whether the trial court had authority to sanction Beverly for her failure to pay use and occupancy under the Act. In that respect, the court first found that because the Act, which creates a mechanism for the peaceful adjudication of possession rights in the trial court, provides the complete and sole means of adjudicating disputes between landlords and tenants, and because it is in derogation of common law, "courts must strictly comply with the procedure outlined in [that] statute." Circle Management, 378 Ill. App. 3d at 608, 882 N.E.2d at 136, citing First National Bank of Evergreen

10

Park v. Chrysler Realty Corp., 168 Ill. App. 3d 784, 791, 522 N.E.2d 1298 (1988).

The Circle Management court next found that, although under the Act the trial court is authorized to grant use and occupancy to landlords during the pendency of their forcible entry and detainer actions, the Act nowhere authorizes the court to sanction tenants if they fail to pay the use and occupancy. Circle Management, 378 Ill. App. 3d at 608, 882 N.E.2d at 136. As we stated:

> "[S]ection 9-201 of the Act permits a party who brings a forcible entry and detainer action to recover use and occupancy charges pending resolution of the possession claim. 735 ILCS 5/9-201 (West 2004). Use and occupancy awards are authorized under the Act because '[a] lessee's obligation to pay rent continues as a matter of law, even though the lessee may ultimately establish a right to rescind the lease, vacate the premises, or obtain other relief.' People *ex rel.* Department of Transportation v. Cook Development Co., 274 Ill. App. 3d 175, 180, [653 N.E.2d 843] (1995). There is no language in section 9-201, however, that expressly permits a trial court to award a landlord possession following a lessee's failure to pay the statutorily authorized use and occupancy charges. Moreover, Beverly is correct that there is 'no *** provision [anywhere in the Act] that authorizes sanctions for non-payment of rent pending trial.' " Circle Management, 378 Ill. App. 3d at 608, 882 N.E.2d at 136.

The court in Circle Managment next held that permitting a trial court to sanction a tenant who, like Beverly, failed to comply with the use and occupancy order by granting possession to the landlord without considering the merits of the underlying possession claim would necessarily

11

defy the Act's statutory scheme by relieving the plaintiff of his/her statutory obligation to establish his/her right to possession and depriving the tenant of his/her statutory rights to present his/her defenses and have the case tried and decided on its merits. Circle Management, 378 Ill. App. 3d at 609, 882 N.E.2d at 137. Specifically, the court explained:

" 'The distinct purpose of the forcible entry and detainer proceeding is to determine only who should be in rightful possession.' Miller v. Daley, 131 Ill. App. 3d 959, 961, [476 N.E.2d 753] (1985). Under the Act, it is the party asserting its right to possession who bears the burden of proof (Harper Square Housing Corp. v. Hayes, 305 Ill. App. 3d 955, 963, [713 N.E.2d 666] (1999); City of Chicago v. Airline Canteen Service, Inc., 64 Ill. App. 3d 417, 435, [380 N.E.2d 1106] (1978)) and must establish its right to possession by a preponderance of the evidence. 735 ILCS 5/9-109.5 (West 2004). If the plaintiff fails to meet this burden, the Act provides that 'judgment for costs shall be entered in favor of the defendant.' 735 ILCS 5/9-114 (West 2004). The defendant in a forcible detainer action has the right to assert any germane defenses in response to the plaintiff's possession claim. 735 ILCS 5/9-106 (West 2004) ('The defendant may under a general denial of the allegations of the complaint offer in evidence any matter in defense of the action'); Rosewood Corp. v. Fisher, 46 Ill. 2d 249, 255, [263 N.E.2d 833] (1970). Moreover, the Act recognizes that both parties have the right to have the dispute tried by a jury. 735 ILCS 5/9-108 (West 2004) ('In any case relating to premises used for residence purposes, either party may demand a trial by jury'); Twin-City Inn, Inc. v. Hahne Enterprises, Inc., 37 Ill. 2d 133, 137-38, [225 N.E.2d 630]

12

(1967)." Circle Management, 378 Ill. App. 3d at 609, 882 N.E.2d at 137.

The court in Circle Management reasoned that under these principles, due process required that the underlying possession claim brought under the Act be resolved "in conformance with the procedural requirements of trial, summary judgment, or judgment on the pleadings." Circle Management, 378 Ill. App. 3d at 611, 882 N.E.2d at 138-39. As the court held, "at the very least, *** [defendant] was entitled to a hearing on the underlying possession claim before possession was granted to [plaintiff]." Circle Management, 378 Ill. App. 3d at 611-12, 882 N.E.2d at 138-39.

In coming to this decision, the Circle Management court relied heavily on the decision in Eckel v. McNeal, 256 Ill. App. 3d 292, 628 N.E.2d 741 (1993). In Eckel, a landlord brought an action under the Act against its tenant because of the tenant's failure to pay rent, and in response, the tenant filed numerous affirmative defenses and counterclaims. Eckel, 256 Ill. App. 3d at 293, 628 N.E.2d at 742. Subsequently, the trial court entered an order requiring the tenant to pay use and occupancy and informed the tenant that the failure to comply with this order would result in immediate possession in favor of the landlord. Eckel, 256 Ill. App. 3d at 294, 628 N.E.2d at 743. The tenant failed to comply, and the trial court accordingly entered judgment in favor of the landlord. Eckel, 256 Ill. App. 3d at 295, 628 N.E.2d at 743. On appeal, the tenant challenged the possession order, contending that it deprived her of her right to a trial. Eckel, 256 Ill. App. 3d at 296, 628 N.E.2d at 744.

The appellate court in Eckel held that forcible entry and detainer actions could be resolved without conducting a trial only if the trial court considered the merits of the underlying

possession claim and entered judgment on the pleadings or summary judgment. Eckel, 256 Ill. App. 3d at 297-98, 628 N.E.2d at 745-46. Finding that the record in that case revealed that the trial court had failed to abide by these procedures, the appellate court in Eckel found that the court's order was void, stating:

"This court is fully aware that forcible detainer and entry claims are adjudicated in a high volume court. [Citation.] However, this fact does not alter plaintiff's burden of proof. In this case, plaintiff was able to obtain a judgment against defendant without following the most basic procedural requirements of a trial, summary judgment or judgment on the pleadings. The proceedings presented in the record here cannot be called due process. Given the facts and circumstances of this case, this court is forced to conclude that the judgment entered against defendant is void." Eckel, 256 Ill. App. 3d at 298, 628 N.E.2d at 746.

The appellate court in Circle Management applied the principles set forth in Eckel and found that because "it appear[ed]" from Beverly's interrogatory questions that she intended to raise the affirmative defense of the breach of the implied warranty of the habitability at trial, which is "a germane affirmative defense to a landlord's possession claim," and because plaintiff did not dispute that the trial court entered the sanction order without hearing any evidence concerning the underlying merits of plaintiff's possession claim, the trial court committed reversible error. Circle Management, 378 Ill. App. 3d at 610, 882 N.E.2d at 137, citing Pole Realty Co. v. Sorrells, 84 Ill. 2d 178, 182, 417 N.E.2d 1297 (1981); Richardson v. Wilson, 46 Ill. App. 3d 622, 623-24, 361 N.E.2d 110 (1977).

In effect, the court in Circle Management held that the statutory requirements as set forth in the Act would apply to evictions made as a result of nonpayment of use and occupancy, as much as to evictions effected by the nonpayment of rent, so that no eviction could be carried out before the merits of the underlying possession claim were entertained in full. See Circle Management, 378 Ill. App. 3d at 611-12, 882 N.E.2d at 139 ("due process requires that the underlying possession claim brought under the Act be resolved in conformance with the procedural requirements of trial, summary judgment, or judgment on the pleadings"); see also 735 ILCS 5/9-201(2) (West 2004) ("The owner of lands *** may sue to recover rent therefor, or a fair and reasonable satisfaction for the use and occupation thereof by a civil action *** [w]hen lands are held and occupied by any person without any special agreement for rent").

In so finding, the Circle Management court acknowledged "the plight faced by landlords in [plaintiff's] situation," (Circle Management, 378 Ill. App. 3d at 611, 882 N.E.2d at 138-39) who have filed complaints pursuant to the Act following a tenant's nonpayment of rent and are unable to collect use and occupancy payments during the pendency of their actions due to the tenant's inability to pay. Nevertheless, the court found that "it is incumbent upon a landlord that brings an action under the Act to prove that [he/she] is entitled to possession." Circle Management, 378 Ill. App. 3d at 611, 822 N.E.2d at 138-39.

The court in Circle Managment next considered whether the trial court's order granting possession of the premises to the landlord as a sanction to the tenant for her failure to comply with the court's use and occupancy order exceeded the trial court's inherent authority to impose sanctions. Circle Management, 378 Ill. App. 3d at 612, 822 N.E.2d at 139.

15

In that respect, the Circle Management court initially held that the trial court's order was not a contempt order. Circle Management, 378 Ill. App. 3d at 613, 822 N.E.2d at 140. In doing so, the court first distinguished between civil and criminal contempt, noting that criminal contempt sanctions are punitive in nature and require a finding that the contemptuous conduct was wilful (Circle Management, 378 Ill. App. 3d at 612, 822 N.E.2d at 139, citing People v. Minor, 281 Ill. App. 3d 568, 574, 667 N.E.2d 538 (1996)), while civil contempt is prospective in nature and is " ' "designed to compel future compliance with a court order" ' [citation]" (Circle Management, 378 Ill. App. 3d at 612, 822 N.E.2d at 139, quoting In re Marriage of Sharp, 369 Ill. App. 3d 271, 279, 860 N.E.2d 539 (2006)). The court then recognized that trial courts have the inherent authority to punish a party for contempt (Circle Management, 378 Ill. App. 3d at 612, 822 N.E.2d at 139, citing People v. Warren, 173 Ill. 2d 348, 370, 671 N.E.2d 700 (1996)), but held that because the parties in that case had stipulated that Beverly's failure to pay the use and occupancy was not wilful but rather arose from her insolvency and her inability to pay, the trial court's order was not a valid contempt order. Circle Management, 378 Ill. App. 3d at 612, 822 N.E.2d at 139, quoting In re Marriage of Logston, 103 Ill. 2d 266, 285, 469 N.E.2d 167 (1984) (the trial court's contempt powers are " 'limited to cases of wilful refusal to obey the court's order' "), and quoting Shapiro v. Shapiro, 113 Ill. App. 2d 374, 388, 252 N.E.2d 93 (1969) (" '[i]t is not a contempt of court to fail to pay money which one neither has nor can obtain and which [s]he has not causelessly either put out of [her] hands or failed to receive' ").

The Circle Management court next considered whether the court's order granting possession to the plaintiff fell within the trial court's inherent authority to impose sanctions

16

against a party that fails to abide by a valid court order. Circle Management, 378 Ill. App. 3d at 613, 822 N.E.2d at 140. In that respect, the court recognized that a trial court has such inherent authority, but noted that a sanction imposed for violation of a trial court order must be "reasonable and responsive to the facts and circumstances of each case." Circle Management, 378 Ill. App. 3d at 613, 822 N.E.2d at 140, citing Smith v. City of Chicago, 299 Ill. App. 3d 1048, 1054, 702 N.E.2d 274 (1998). In addition, the court noted that sanctions, which result in a default judgment against either party, are a "drastic" measure which should be applied only if " 'it appears that all other enforcement efforts of the court have failed to advance the litigation.' " Circle Management, 378 Ill. App. 3d at 613, 822 N.E.2d at 140, quoting Sander v. Dow Chemical Co., 166 Ill. 2d 48, 67-68, 651 N.E.2d 1071 (1995). The court in Circle Management concluded that such sanctions are appropriate only " 'where the party's actions show a deliberate, contumacious or unwarranted disregard of the court's authority.' " Circle Management, 378 Ill. App. 3d at 613, 822 N.E.2d at 140, quoting Shimanovsky v. General Motors Corp., 181 Ill. 2d 112, 123, 692 N.E.2d 286 (1998).

Applying these rules to the facts before it, the court in Circle Management held that because the sanction imposed by the trial court as a result of Beverly's inability to pay the use and occupancy essentially resulted in a default judgment against her, by granting possession of the premises to the plaintiff without requiring him to establish that he was entitled to possession in the first place, that sanction was not "reasonable and responsive to the facts in the case," and was therefore not a valid exercise of the trial court's inherent authority to sanction. Circle Management, 378 Ill. App. 3d at 613, 822 N.E.2d at 140.

No. 1-07-0550

Employing the principles articulated in <u>Circle Management</u> to the cause at bar, we are compelled to find that the trial court erred when it granted possession of the apartment to the plaintiff as a sanction for the defendants' failure to pay the use and occupancy as ordered by the trial court.

In that respect, we first find that defendants are correct in asserting that this action by the trial court prevented them from asserting their affirmative defenses at trial. We initially note that it was not necessary for the defendants to answer the plaintiff's complaint so as to raise any affirmative defenses because, under Illinois Supreme Court Rule 181(b)(2), the filing of a general appearance by the defendants and their demand for a jury trial acted as a denial to the claims raised in the complaint and entitled them to raise any defenses thereafter. See 210 Ill. 2d R. 181(b)(2) ("In actions for forcible detainer *** the defendant must appear at the time and place specified in the summons. If the defendant appears, he or she need not file an answer unless ordered by the court; and when no answer is ordered, the allegations of the complaint will be deemed denied, and any defense may be proved as if it were specifically pleaded"); see also <u>Circle Management</u>, 378 Ill. App. 3d at 609-10, 822 N.E.2d at 136-38.

However, in the present case, it is evident from the defendants' response to the plaintiff's motion to compel payment of use and occupancy that defendants intended to raise at least one affirmative defense at trial.[1] Specifically, defendants intended to assert that plaintiff was not

---

[1]We note that on appeal, defendants also contend that the actions of the trial court precluded them from raising the defense of retaliation pursuant to the Chicago Residential Landlord and Tenant Ordinance. See Chicago Municipal Code §5-12-150 (1991). As shall be

18

entitled to possession because he breached the warrant of habitability, or as the defendants themselves articulated it in their pleading, "whether the depicted conditions [of the apartment] violate[d] the minimum habitability standards established by the Chicago Building Code."

In an eviction action where a plaintiff asserts a right to possession based solely on the nonpayment of rent, "the question of whether rent is due and owing is not only germane, but *** is the crucial and decisive issue for determination." Jack Spring, Inc. v. Little, 50 Ill. 2d 351, 358, 280 N.E.2d 208, 213 (1972). A tenant is entitled to raise the landlord's breach of the warranty of habitability as a defense in a residential eviction action, because each residential lease implies a warranty of habitability which can be fulfilled by compliance with the local building ordinances. Jack Spring, 50 Ill. 2d at 366, 280 N.E.2d at 217. "If rent is not owed because the tenant's setoffs based on alleged violations of the landlord's breach of an implied warranty of habitability *** exceed the amount of rent the landlord claims to be owing, plaintiff is not entitled to possession solely by reason of nonpayment of rent." Richardson v. Wilson, 46 Ill. App. 3d 622, 624, 361 N.E.2d 110, 112 (1977), citing Jack Spring, 50 Ill. 2d at 366, 280 N.E.2d at 217.

The plaintiff is correct, however, in asserting that unlike in Circle Management, in the present case the trial court was presented with some evidence with respect to the merits of this affirmative defense. The defendants themselves do not dispute the facts that were ascertained at

_____

demonstrated, however, because we already determine that the trial court's action deprived defendants of their statutory right to assert the affirmative defense of the landlord's breach of the warranty of habitability, we need not address this contention on appeal.

this hearing, but, rather, contend that this was not a full evidentiary hearing on the merits where, if all the evidence had been presented they would have shown that their damages exceeded the amount of rent that was claimed due and which, therefore, would have entitled plaintiff to no use and occupancy payments, much less possession of the apartment. We agree.

A review of the record reveals that the only issue considered by the trial court at the hearing on plaintiff's motion to compel the defendants to pay use and occupancy was the *current* condition of the apartment, not the condition of the apartment as it had been in the months preceding defendants' initial failure to pay rent, nor the apartment's compliance with building code violations, nor any attempts by the plaintiff to remedy the conditions of the apartment prior to the lawsuit. In fact, the record reveals that during the questioning of the building manager, the trial court admonished defense counsel that he would not consider whether the manager had fixed a certain defect in the apartment, because "the [sole] question [at the hearing] is the market value of the premises today." As such, even though the factual evidence presented at that hearing would have been relevant and germane to the merits of the underlying possession claim, the record reveals that the trial court was not entertaining the merits of that claim but was merely attempting to ascertain the value of the property so as to order the correct amount for use and occupancy.

More overridingly, even though the trial court did consider some of the evidence relevant to the underlying possession claim and defendants' affirmative defense of the breach of the implied warranty of habitability, the record reveals that none of the procedures for a summary disposal of the issues, through either summary judgment or a judgment on the pleadings, were

20

followed. See Circle Management, 378 Ill. App. 3d at 611, 882 N.E.2d 137-38 (holding that due process requires that the underlying possession claim brought under the Act be resolved "in conformance with the procedural requirements of trial, summary judgment, or judgment on the pleadings"). As such, contrary to the plaintiff's assertions, defendants were deprived of their statutory right to raise and present this affirmative defense in its entirety. See Circle Management, 378 Ill. App. 3d at 610, 882 N.E.2d 137-38.

The plaintiff here, just as the plaintiff in Circle Management, asserts that if the trial court did not have statutory authority to sanction defendants before considering the merits of the underlying possession claim, it nevertheless properly utilized its inherent power to sanction defendants for their failure to abide by the court order requiring them to pay use and occupancy charges. Again, applying the principles articulated in Circle Management, we must disagree.

In that respect, we first acknowledge that in the present case, unlike in Circle Management, defendants disobeyed the court order for use and occupancy, not because they were insolvent and/or unable to pay the use and occupancy, but in order to challenge the practice of utilizing use and occupancy orders to dispossess tenants of the premises without considering the merits of the underlying forcible entry and detainer action. However, even though such conduct could be construed as a "wilful refusal to obey the court's order," thereby validating a criminal contempt order (see Circle Management, 378 Ill. App. 3d at 612-13, 882 N.E.2d 139-40), because the purpose of the conduct was to ascertain the validity of use and occupancy orders in general, we cannot find that a sanction effectively defaulting judgment in favor of plaintiff was "reasonable or responsive to the present circumstances." See Circle Management, 378 Ill. App.

21

3d at 612-13, 882 N.E.2d 139-40 (noting that a sanction must be "reasonable and responsive to the facts and circumstances of each case," and that sanctions which result in a default judgment against a party are drastic and should be used only "where 'the party's actions show a deliberate, contumacious or *unwarranted* disregard of the court's authority' [citation]" (emphasis added)); Smith, 299 Ill. App. 3d at 1054, 702 N.E.2d at 279 ("[s]anctions, be they for the violation of a statute, rule or order, must be reasonable in light of the attendant facts and circumstances of the case"); see also Spallone v. United States, 493 U.S. 265, 276, 107 L. Ed. 2d 644, 656, 110 S. Ct. 625, 632 (1990), quoting United States v. City of Yonkers, 856 F.2d 444, 454 (2nd Cir. 1988) ("'in selecting contempt sanctions, a court is obliged to use the "*least possible power* adequate to the end proposed" ' [citation]") (emphasis added)); City of Quincy v. Weinberg, 363 Ill. App. 3d 654, 666, 844 N.E.2d 59, 70 (2006) (holding that the forced sale of one's residence to, in effect, ensure compliance with the court's orders was not a viable sanction option in city's suit against defendant for nuisance). In that respect, we find it instructive that "[i]t *** has long been recognized that exposing one's self to contempt proceedings is an appropriate method of testing the validity of a court order." People v. Shukovsky, 128 Ill. 2d 210, 219, 538 N.E.2d 444, 447 (1988), citing People ex rel. General Motors Corp. v. Bua, 37 Ill. 2d 180, 189, 226 N.E.2d 6 (1967); see also *e.g.*, People v. Campobello, 348 Ill. App. 3d 619, 626, 810 N.E.2d 307, 313-24 (2004) (noting that it is proper for a party to test the correctness of an otherwise unappealable discovery order through contempt proceedings initiated by the party's refusal to comply with the discovery order and its subsequent appeal of the contempt sanction). Consequently, we cannot find that the sanction imposed in this case can be upheld as a valid exercise of the trial court's

inherent authority to sanction.  Circle Management, 378 Ill. App. 3d at 613, 882 N.E.2d 140.

Because we can resolve this case on the aforementioned grounds, we need not address the defendants' argument that the sanction entered in this case violated the due process and separation of powers provisions set forth in the state and federal constitutions.  See Bonaguro v. County Officers Electoral Board, 158 Ill. 2d 391, 396, 634 N.E.2d 712, 714 (1994) (recognizing that a court should consider constitutional questions only when "the case cannot be determined on other grounds").

For all of the foregoing reasons, we reverse the judgment of the trial court.

Reversed.

McBRIDE, and O'MALLEY, JJ.,[2] concur.

---

[2]Justice McNulty initially heard the oral argument in this case.  Following her retirement, however, Justice O'Malley was substituted.  She listened to the tapes of the oral argument, and read the briefs and the record.

No. 1-07-0550

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**
**(Front Sheet to be Attached to Each Case)**

Please use the following form

FILIP ROTHEIMER,

Plaintiff-Appellee,

v.

OSCAR ARANA AND MARIA RIVERA (OLIVERS),

Defendants-Appellants.

Docket No.

No. 1-07-0550

COURT

Appellate Court of Illinois
First District, SIXTH Division

Opinion
Filed

July 25, 2008
(Give month, day and year)

JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:

JUSTICES

PRESIDING JUSTICE McBRIDE and JUSTICE O'MALLEY concur.

Lower Court and Trial Judge(s) in form indicated in margin:

APPEAL from the Circuit Court of Cook County; the Hon Judge Presiding.

Appeal from the Circuit Court of Cook County;

The Hon. Sheldon C. Garber Judge presiding..

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word FOR NONE if not represented.

APPELLANTS
John Doe, of Chicago

For APPELLEES, :

FOR APPELLANT: Cara A Roecker, Jonathan K. Baum, Brian J. Poronsky, Jeffrey E. Jamison, Katten Muchin Rosenman LLP, 525 W. Monroe St., Chicago IL 60661

Smith and Smith of Chicago,

FOR APPELLEE: Robert A. Coe, Matthew J. Goldberg, Robert A. Coe & Associates, 555 Skokie Blvd, Northbrook, IL 60062

Add attorneys for third-party appellants and/or appellees.

Amicus Curiae in Support of Defendants: Carlos Ramirez, Richard Wheelock, Legal Assistance Foundation of Metropolitan Chicago, 111 West Jackson Blvd, 3rd Floor, Chicago, IL 60604

Amici in Support of Plaintiffs:
For the Chicagoland Apartment Association: Richard W. Christoff, Sanford Kahn, Ltd., 180 N. LaSalle Street, Chicago, IL 60601
For TLC Management Co.: Cary G. Schiff & Associates, 134 N. LaSalle St., Suite 1135, Chicago, IL 60602

24